Appeal from Third District.

REESE et al. v. QUALTROUGH et al.

No. 2804.  Decided March 30, 1916.  (156 Pac. 955.)

1.  PLEADING—REPLY—STATUTE.   Under  the  statute  the  plaintiffs'
    reply, which constituted merely a general. denial, was unneces-
    sary.  (Page 27.)

2.  PLEADING—COMPLAINT—SEPARATE CAUSES OF ACTION.  Although,
    where facts are commingled in a complaint which, if separated,
    different defenses would apply, or where defendants had a de-
    fense to a certain group of facts, the plaintiffs will be required
    to separate them, a complaint which alleged that the defend-
    ants had caused large quantities of mud and debris to flow
    into the plaintiffs' fishponds over a considerable period of time,
    the wrongful acts being so numerous, continuous, and blended
    together as to constitute but a single wrong, was sufficient.
    (Page 27.)

3.  LIMITATION OF ACTIONS—PARTICULAR ACTIONS—INJURIES TO "PER-
    SONAL PROPERTY."   An action for damages caused by the pollu-
    tion of fishponds, the plaintiffs not owning any interest 'in the
    real estate on which the ponds were located, was an action for
    damages to personal property, as a right or interest which a
    person has in things personal, and was barred after three years
    under Comp. Laws 1907, Section 2877, Subd. 3, providing that
    all actions for taking, detaining, or injuring personal property
    must be commenced within three years and not an unclassified
    action under Comp. Laws 1907, Section 2883, providing that
    an action for relief not otherwise provided for must be com-
    menced within four years.  (Page 29.)

4.  JUDGMENT—DOCKET ENTRY AS EVIDENCE—JUDICIAL RECORDS.  An
    entry in a previous action between the same parties which
    never proceeded to final judgment, taken from the docket of the
    clerk of the court, was inadmissible, since the judgment is the
    only competent evidence to prove a prior adjudication.  (Page
    34.)

5.  CONSPIRACY—NATURE AND ELEMENTS.  The fact that certain per-
    sons have a joint interest in property and unite in an action
    affecting it is not evidence from which a conspiracy could rea-
    sonably be inferred.  (Page 34.)

6.  EVIDENCE—DOCUMENTARY  EVIDENCE—JUDICIAL  RECORDS.   The
    complaint in a former action between the same parties is the
    only competent evidence respecting the plaintiffs' claims in
    that action.  (Page 34.)

Reese et al. v. Qualtrough et al., 48 Utah 23.

7. JUDGMENT—EVIDENCE TO SUSTAIN—JOINT OWNERSHIP OF CO-DEFENDANTS. Where the defendants or some of them, with knowledge of the others from day to day, caused the pollution of water flowing from their property into the plaintiffs' fishpond, the joint interest of the defendants in the property on which the acts were committed was sufficient to authorize a judgment against all of the defendants. (Page 34.)

8. APPEAL AND ERROR—REVIEW—VERDICT. The appellate court is bound by the findings of the jury if supported by some substantial evidence. (Page 34.)

9. APPEAL AND ERROR—REVIEW—PREJUDICIAL ERROR—ADMISSION OF EVIDENCE. In an action for damages caused by the pollution of water flowing into plaintiffs' fishpond, the admission of an entry made in the course of proceedings in a prior action between the same parties which did not proceed to judgment was prejudicial error. (Page 34.)

10. TRIAL—INSTRUCTIONS. In an action for damages caused by the pollution of water flowing into the plaintiffs' fishpond, an instruction that the defendants were not legally required to permit water coming from their spring to flow into the plaintiffs' fishponds below, and that, if the plaintiffs were damaged by reason of the defendants not permitting their spring water to flow into the fishpond, no recovery could be had for such damages, if qualified by the statement that, if defendants did permit any water to flow from their spring into the plaintiffs' fishpond, they then had no right to befoul the water or cause refuse to be carried by it to the fishpond, was improperly refused. (Page 36.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by George E. Reese and others against Frank Qualtrough and others.

Judgment for plaintiffs. Defendants appeal.

REVERSED and REMANDED.

*Hurd & Hurd* and *E. B. Critchlow,* for appellants.

*Cheney, Jensen & Holman* and *Carlson & Carlson,* for respondents.

FRICK, J.

The plaintiffs, George E., William H., and Thomas M. Reese, and Thomas M. Reese as administrator of the estate of Brigham Reese, deceased, brought this action against Frank, Elizabeth M., and Frances Qualtrough to recover damages for alleged torts which it is alleged the defendants committed to the injury and damage of the plaintiffs.

The gist of the action, which is set forth in a very lengthy complaint, may be summarized thus: In the first paragraph it is alleged that the plaintiff Brigham Reese was the owner of certain real estate in Salt Lake county, which is specifically described. Paragraphs two and three merely state other matters of inducement respecting the parties. In paragraph four it is alleged that a certain stream of water, naming it, flows through the lands of both the plaintiffs and the defendants, and that the plaintiffs at a certain time had constructed certain fishponds along the stream of water, and that prior to the acts complained of plaintiffs had raised large numbers of fish for market, and had disposed of them at a great profit. In paragraph five it is, in substance, alleged that in the months of September, October, and November, 1909, "and at divers other times, since the said months, said defendants had willfully and intentionally flowed large quantities of waste water through certain ditches, describing them, and had willfully and intentionally changed the course of said ditches and the waters flowing therein at frequent intervals, and that they had caused "large quantities of mud, silt, and debris" to flow into said stream, and that "the said stream flowed and carried into plaintiffs' fishponds mud, silt, rubbish, leaves, and other debris, clogging, injuring, and breaking through plaintiffs' fish screen, and injuring and destroying plaintiffs' fish." In the same paragraph it is also alleged that on or about the 30th day of June, 1910, the defendants willfully and intentionally diverted the waters from the stream aforesaid, and that by reason of certain of their acts, which are described, the said stream "flowed large quantities of mud and debris into plaintiffs' fishponds and into plaintiffs' fish screens, thereby injuring and killing plaintiffs' fish living

therein, and putting plaintiffs to great and unnecessary expense and labor in attempting to keep the said screens and ponds free and clear of debris and rubbish.'' In paragraph six it is alleged that during the years 1909, 1910, and 1911 the defendants willfully and intentionally placed certain boards into the bed of the stream aforesaid in such manner as to intercept the waters flowing therein, and that by certain other acts they ''caused mud, silt, and debris to flow in large quantities into plaintiffs' said fishponds and fish screens, well knowing that the said mud and debris was injurious and harmful to the fish in plaintiffs' said ponds, whereby large numbers of said fish were killed and destroyed.'' Practically the same facts are alleged in paragraph seven, except that the year 1912 is included. In paragraph eight similar facts are alleged, including, however, the years 1910, 1911, and 1912; and the paragraph ends thus: That by reason of the acts defendants ''caved and washed into the plaintiffs' fishway large quantities of earth obstructing said fishway, and causing plaintiffs great and unnecessary labor and expense in attempting to keep said fishway open and in operation.'' In paragraph nine other certain acts of defendants are complained of as taking place in the year 1912 and 1913, whereby the defendants caused ''large rents or openings in the said screens, through which large numbers of plaintiffs' fish escaped into the premises of the defendants and were forever lost to these plaintiffs.'' In paragraph ten certain acts of the defendants are again complained of as occurring during the fall and winter months of the years 1910, 1911 and 1912 which, it is alleged, caused plaintiffs ''great and unnecessary labor and expense in attempting to keep the said waters and screens clear and free of rubbish.'' Practically the same facts are alleged in paragraph eleven as occurring in the years 1912 and 1913, with the same results. In paragraph twelve it is again alleged that during the years 1909, 1910, 1911, and 1912 the defendants, by certain wrongful acts, caused plaintiffs' fish screens to become clogged and befouled, in consequence of which ''the plaintiffs were put to great and unnecessary expense and large numbers of plaintiffs' fish were killed and destroyed.'' It is then alleged in paragraph thir-

teen that "upon divers occasions during each year of the years 1909, 1910, 1911, and 1912" the defendants were guilty of certain acts, describing them, whereby they caused large quantities of mud and debris to flow into plaintiffs' fishponds through the stream aforesaid, "thereby causing the plaintiffs great and unnecessary labor and expense and injuring and destroying large numbers of plaintiffs' fish." In paragraph fourteen it is alleged that the acts complained of and suffered were continuous and recurring, and that the loss and injury to plaintiffs' said fishponds and fish were such "as to compel them to abandon their business of raising and growing fish." The plaintiffs then say that by reason of the injuries described as aforesaid they have suffered damages in the sum of $7,500, for which sum they pray judgment.

The defendants assailed the complaint by general and by special demurrers, and also by motion to make more specific. The special demurrer was based upon the ground that various matters and causes of action were "improperly united in said complaint," and that the "complaint is uncertain," etc. The demurrers and motion were overruled, and the defendants filed a joint answer in which, after admitting the matters of inducement, they denied all other allegations. They also pleaded Comp. Laws 1907, Section 2877, subd. 3, as a bar to the action. They also alleged that the defendants Elizabeth and Frances Qualtrough were improperly made codefendants, and they again set up in their answer that several causes of action were improperly united in the complaint.

The plaintiffs filed a reply, which, in view that it constituted merely a general denial, was unnecessary under our statute and performs no function here.

Upon the foregoing issues a trial to a jury resulted in a general verdict and in special findings in favor of the plaintiffs for the sum of $3,000. The trial court denied a motion for a new trial and entered judgment upon the verdict. The defendants appeal.

It is insisted that the court erred in refusing to sustain, defendants' special demurrer upon the ground that several causes of action were improperly united in the complaint. The real objection, however, is that several

causes of action were commingled without being sep-
arately stated. The question is not entirely free from doubt.
While it is not practicable to set forth the whole complaint
in this connection, yet from the substance of it as we have
stated the same above it is apparent that the wrongful acts
complained of were very numerous, continuous, and of such
a character that it would be entirely impracticable, if not
impossible, for the plaintiffs to set forth each specific wrong-
ful act as a separate and distinct cause of action. That,
however, is just what defendants demand. Appellate courts
should be, and usually are, very loth to interfere with, much
less to unconditionally reverse judgments otherwise just and
proper for defects in pleading which do not transgress fun-
damental principles or rules of pleading, and where, as here,
it is clear that the defendants were not prevented from, nor
even hampered in presenting any defense they may have had
to the matters set forth in the complaint and where the char-
acter of relief, the judgment, and any possible defense would
all be applicable to all the matters set forth in the complaint.
There is no reason whatever why the complaint should not be
held good. Where facts are commingled in a complaint so
that, if they were separated, different defenses would apply,
or where a defendant might have a good defense to a certain
group of facts constituting a cause of action which he does
not have to all the facts as they are commingled in the com-
plaint, the courts do not hesitate to require the plaintiff to
separate the facts into separate causes of action so as to
permit the defendant to intelligently meet all the matters set
forth in the complaint. Where, as in this case, however, the
wrongful acts complained of are of such a character, and are
so numerous and continuous and so blended together, that
in legal effect they constitute but a single wrong or transac-
tion, a segregation will not be required. If, under such cir-
cumstances, segregation were required, then the acts of each
day would have to be stated separately as constituting sep-
arate and independent wrongs and causes of action. Indeed,
the evidence shows that the acts were not only of daily oc-
currence, but that on some days there were a number of
such wrongful acts committed by the defendants, or by some

of them.  The circumstances therefore are such that we cannot see how it would be at all practicable to plead the facts otherwise than was done by the plaintiffs in their complaint, except to omit unnecessary repetitions.  In *Gladfelter* v. *Walker,* 40 Md. 1, a cause of action for trespass upon real estate was mingled with one for injuries and damage to personal property situated upon the real estate, and the real estate and the personal property were injured by acts somewhat similar to those complained of here; yet the court in that case refused to interfere, for the reason that there, as here, the defendant was in no way hampered in making his defense, and hence it was held that he was not prejudiced.  In the case at bar the acts of the defendants did not constitute a trespass upon real estate, and counsel concede that fact.  The gist of the action, as we shall see, was therefore one for injury and damage to personal property, and in view of all the circumstances in this case we are of the opinion that the court committed no prejudicial error in overruling the motion and the demurrers.

The refusal of the court to charge the jury that all wrongful acts which occurred more than three years prior to the 19th day of August, 1913, the day the action was commenced, was barred by our statute, is also assigned as error.  The defendants rely on Comp. Laws 1907, Section 2877, subd. 3, which, so far as material, provides:

"All actions for taking, detaining, or injuring personal property, * * * " must be commenced "within three years."

The foregoing provision is taken from California Code of Civil Procedure, Section 338.  An action for trespass upon real estate must be brought within the same time.  Counsel for defendant insist that the injuries complained of were injuries to personal property, and hence the court erred in refusing to charge the jury as requested.  Upon the other hand, counsel for plaintiffs insist that the cause of action declared on falls within Comp. Laws 1907, Section 2883, which provides:

"An action for relief not hereinbefore provided for must

be commenced within four years after the cause of action shall have accrued.''

They contend that the cause of action set forth in the complaint is not one for injury to personal property, but is one which is unclassified, and hence falls within the provisions of section 2883. If the injuries complained of were injuries to personal property, the provisions of section 2877, subd. 3, apply and an action is barred within three years; and, if the action is one for things which are unclassified, as contended for by counsel for plaintiffs, then this action is governed by the provisions of section 2883, and is not barred until four years have elapsed. We are of the opinion that this action is one for injury to personal property pure and simple. In that connection it should be remembered that the plaintiffs as associates in the fishponds and in raising fish did not own, or claim to own, any interest in the real estate on which the fishponds were located. The title to the land was in the deceased, Brigham Reese. The fishponds were therefore owned and operated by persons who claimed no interest in the soil. Under such circumstances the fishponds, as well as the fish therein, must be regarded as personal property. Indeed, counsel for plaintiffs concede that the fishponds and the fish therein were personal property, but what they contend is that the acts complained of resulted in injuries to the business of the plaintiffs, and that therefore the cause of action is not governed by the provisions of section 2877, subd. 3, but falls within the provisions of section 2883 as unclassified. In 3 Words and Phrases, second series, p. 1005 et seq., numerous instances are given where courts have passed on what is included within the term personal property. Among other definitions is the following:

"Personal property is the right or interest which a person has in things personal."

This seems to be as comprehensive a definition as could well be formulated, and it also seems to be as proper as it is comprehensive. In *Old Dominion, etc., Co.* v. *McKenna* (C. C.) 30 Fed. 48, the question of what constituted personal prop-

erty in an action for damages was involved. The decision is correctly reflected in the headnote, which reads as follows:

"An action to recover damages from those who have combined to do such an injury to a plaintiff's business and the use of his property is 'an action for an injury to property,' within the meaning of Section 549, Subd. 2, Code Civil Proc. N. Y."

In *People* v. *Hughes,* 19 N. Y. Supp. 550, the same thought is expressed in the headnote thus:

"An injury to one's 'business' is an injury to his property, within Pen. Code, Sections 552-553, defining 'extortion' as procuring the property of another by means of fear, induced by threats to injure his 'property.'"

In *Gale* v. *McDaniel,* 72 Cal. 334, 13 Pac. 871, it is held that an action for willful and malicious destruction of a saloon and livery stable was barred by the provisions of the California statute of which section 2877, subd. 3, *supra,* is a copy. In *Lowe* v. *Ozmun,* 137 Cal. 257, 70 Pac. 87, the Supreme Court of California expressed the opinion, although the question was perhaps not directly involved, that:

"Section 338 of the Code of Civil Procedure * * * is designed to include all actions for torts involving personal property, without reference to the particular remedy employed."

The provisions of section 338 referred to above are the same as those in section 2877, subd. 3, of our Code. We have already pointed out that no one contends that the fish or fishponds were not personal property. If authority were necessary, however, that they are personalty, it is not wanting. In *Southard* v. *Hill,* 44 Me. 92, 69 Am. Dec. 85, it is expressly held that, where a dam is constructed in a stream, and such dam is upon the soil of another, the dam is personal property. In *People* v. *Morrison,* 194 N. Y. 175, 80 N. E. 1120, 128 Am. St. Rep. 552, it is held that oysters which have been reclaimed from nature and transplanted are personal property. No one, we think, will dispute the foregoing statements as being good law. In view of the foregoing, how can it be reasonably contended that the injuries and damage that plaintiffs claim they have suffered were not injuries and damage to their personal property? If we once depart from the well-

defined line of demarcation between personal and other kinds
of property, we must adopt a mere arbitrary rule in deter-
mining whether the provisions of section 2877, subd. 3, or
those of section 2883 apply. We must then say that an
action for the destruction of $10,000 worth of cattle or sheep
owned by a farmer or live stock grower is barred within three
years because the action is governed by section 2877, subd. 3,
while an action for the destruction of one hundred dollars
worth of cigars in a cigar store is not barred until four
years have elapsed, since such a case is controlled by the
provisions of section 2883, because the action is one that in-
terferes with or destroys business. It is not necessary to mul-
tiply illustrations, which might well be done. When one in-
terferes with my grocery, livery, or fish business he interferes
with my property; and when he destroys my business he
destroys my property. There is no escape from that con-
clusion. And the same result follows whether it is viewed
from the standpoint of economics or law. When a thing is
to be regarded as property for one purpose, it should be held
so for every other purpose, unless there is some overwhelm-
ing reason why it should be held otherwise. It is obvious
therefore that to adopt a rule that the destruction of property
because it is used in a certain business is no longer personal
property would not only be elusive and fallacious, but it
would be unjust and unfair, in that it would make a distinc-
tion where there is no difference. Nor can it make any differ-
ence what the action in which relief is sought is called. The
fact that a plaintiff may contend that his action is not to
recover damages for injuries to his personal property, but that
it is one to recover damages for interference with, or loss of,
his business, cannot affect the question of whether one or the
other statute of limitations should apply. This is made very
clear by the Supreme Court of Minnesota in *County of Red-
wood* v. *Winona, etc., Land Co.*, 40 Minn., 526, 42 N. W. 473,
where, after a somewhat exhaustive discussion respecting
when and under what circumstances statutes of limitations
apply, the court says:

"It is also well settled that such statutes, though in terms applica-
ble only to 'actions' are to be applied as a rule for all proceedings

that are analogous in their nature to actions, *so as to make the right sought to be enforced, and not a form of procedure, the test as to whether or not the statute applies."*   (Italics ours.)

The foregoing language is approved by the Supreme Court of the United States in *Bristol* v. *Washington County*, 177 U. S. 147, 148, 20 Sup. Ct. 585, 44 L. Ed. 701.   The doctrine just stated is as wholesome as it is just and practicable. Neither the form of the proceeding nor the name applied to it can change the nature of the wrong or the injury.   It is the wrongful acts which result in injury and damage which give the right of action, and, if the injuries are to personal property, the statute fixes the time within which such an action must be brought, and the name of the action can have no effect upon the question of what statute controls.

In what we have said we have not been unmindful of the conclusions reached by the Supreme Court of Washington in *Welch* v. *Seattle & M. R. Co.*, 56 Wash. 97, 105 Pac. 166, 26 L. R. A. (N. S.) 1047, which is relied on by plaintiffs' counsel, and which might be distinguished, to some extent at least, from this case.   We shall, however, not attempt to make any distinction, nor do we rely upon any that could be made. Nor shall we do more than to say that we are not impressed with the conclusions reached by the court in that case.   It is manifest that the court there affects to find a distinction where there is no difference.   We think the rule that we are adopting is more practicable, safe, and more just than the one adopted in the Washington case, and, in our judgment, conforms better to sound reason and fundamental principles.

Finally upon this point counsel insist that this case should be ruled by what we said in the case of *O'Neill* v. *Railroad Co.*, 38 Utah, 475, 114 Pac. 127, where we held that an action for damages suffered by an owner of property abutting upon a railroad right of way or street in which the railroad is laid, where no part of the owner's property is taken, falls within the provisions of section 2883, and is not barred until four years have elapsed from the time the cause of action accrues, for the reason that an action of that character is not covered by any other section of our statute of limitations. We cannot see how the ruling in that case can be given any

effect here.   That case was not one for trespass upon real property, nor was it one for injury to personal property.   We there held that section 2883 necessarily applied to such an action.   The reason for the holding is not far to seek.   Indeed, it is quite obvious.   The right of action in cases like the O'Neill case, as we have repeatedly pointed out, is one that did not exist at common law, but is one created by our Constitution, which prohibits private property from being either taken or damaged for public use without just compensation. In the O'Neill Case we were dealing with a subject which was not covered, nor intended to be covered, by any other section except section 2883.   Such is the general trend of the decisions, and counsel for both sides concede that such is the case.   The O'Neill Case can therefore not be considered as analogous to the case at bar.   For the reasons stated, we are clearly of the opinion that actions like the one at bar are actions for injuries to personal property, regardless of the form of the action or the measure of damages that may be sought to be, or be, applied, and are governed by section 2877, subd. 3.   The court therefore erred in refusing defendants' request to charge as aforesaid.

It is next contended that the court erred in permitting plaintiffs to read in evidence a certain entry which was made in the course of the proceedings in another action between the same parties.   It was made to appear that the action in which the entry in question was made never proceeded to final judgment, but was dismissed without prejudice, and another action was, in fact, commenced.   It also appears from the record that the pleadings filed in that action were introduced in evidence before the entry in question was offered and permitted to be read in evidence to the jury.   The entry in question reads as follows:

"March 28, 1911.   Entered order.   The court finds issues for defendants."

The defendants referred to are the plaintiffs in this action. Who made the order, or under whose direction it was made, does not appear, except that it is found in a docket kept by the clerk of the District Court of Salt Lake County, and

therefore, by inference, may be assumed was made under his direction. The ruling of the court in admitting the entry in question in evidence, counsel for defendants contend, was erroneous, while counsel for plaintiffs defend the ruling upon the ground that it was at least some evidence to show that the defendants confederated and conspired together to injure the plaintiffs, and, in view that that was one of the issues in the case, the entry was proper evidence. We think the entry was not admissible for that, or for any other, purpose. The action in which it was made never proceeded to judgment; hence the issues were never judicially determined for or against either party, and, if they had been, the entry nevertheless was not proper nor competent evidence to prove that fact. In this jurisdiction the findings of fact and conclusions of law constitute the decision of the court, and the judgment based thereon would be the proper evidence to prove prior adjudication. How could the entry be said to be competent evidence to prove any fact in issue in this action? If the defendants did conspire, yet the entry was no evidence from which such a conspiracy could reasonably be inferred. But is the fact that certain persons who have a joint interest in certain property unite in an action affecting the same any evidence of a conspiracy? Clearly not. Persons who are jointly interested in certain property may not only unite in bringing an action affecting their interests, but they always ought to do so under our Code of Procedure. The complaint in that action, which was already in evidence, was the only competent evidence respecting defendants' claims in that action. That was already before the court and jury. Even the complaint was not evidence of a conspiracy. Neither was it necessary to prove a conspiracy by the defendants in order to entitle plaintiffs to a judgment against all of them for the acts complained of, in case the jury found that the defendants, or some of them, with the knowledge of the others, had from day to day or from time to time committed the acts. The joint interest of the defendants in the property upon which the acts complained of were committed, and which resulted in the alleged injuries to plaintiff's property, which joint interest was freely conceded by the defendants, in view of the

whole evidence, was and is sufficient to authorize a judgment against all of the defendants upon the theory of unity of interest and the inference of agency arising from such unity of interest in connection with their conduct.' The court, however, did not limit the entry as evidence of joint interest, or to the inference of agency, but permitted the jury to consider it for all purposes. It may well be that in some cases and under certain circumstances we might be justified in holding that, although it was error to admit the entry in evidence, yet the error was harmless. We cannot say that in view of the facts and circumstances of this case. We have carefully examined the evidence, and upon the whole, if we were trying the facts, we would be inclined to find that the plaintiffs had not sustained the burden of proof in showing by a preponderance of the evidence that the injuries to the fish and the death thereof were not produced by causes. other than the acts of the defendants. The jury, however, found to the contrary, and we are bound by their finding so long as the finding is supported by some substantial evidence. The question as to what caused the death of the fish being a close one, the jury most likely would assume that, in view that the district judge had found against the defendants in an action where their acts in another form were involved, therefore, in the judgment of the judge, the defendants were in the wrong. The defendants for that reason, in all probability, were not condemned in this case by the judgment of the jury alone, nor upon the competent evidence before them, but were condemned partly upon the incompetent evidence and partly upon the judgment of the district judge. For that reason the admission of the entry aforesaid in evidence constituted prejudicial error.

We are also of the opinion that the court should have charged the jury, in effect at least, as requested by the defendants in their request No. 9, namely, that the defendants were not legally required to permit the water coming from their spring, which was situated above plaintiffs' fishponds, to flow into their fishponds below, and that, if the plaintiffs were damaged to any extent for the sole reason that defendants had not permitted their spring water to flow down into the fishponds, no recovery could be had

for such damages.  Of course, in that connection the jury should also be told that, if the defendants did permit any water to flow from their spring into plaintiffs' fishponds, then the defendants had no right to befoul the water or to cause dirt or refuse matter to be carried by means of it into the fishponds.

It is also strenuously insisted that the court erred in admitting certain evidence which, it is contended, were merely the conclusions of the witnesses.  While it is true that the court permitted some of the witnesses to testify to conclusions, it is however, also true that, with probably one or two exceptions, the witnesses first testified to the facts upon which their conclusions were based.  While it is true that the jury should be permitted to draw their own inferences and conclusions, and that, ordinarily at least, it constitutes error to permit a witness to usurp the functions of the jury, yet, in view of the whole record, we should not reverse this judgment for the reasons urged in this assignment.  The court will, no doubt, protect the defendants' interests in that regard upon a new trial.

There is also some complaint with respect to the measure of damages adopted by the court.  In the class of cases to which this one belongs the courts are greatly divided regarding the true measure of damages.  It is therefore not an easy matter to formulate a hard and fast rule which will be acceptable by, and which will reflect justice upon, all parties to such actions.  While we cannot see how the defendants could have been prejudiced by the instructions upon the question of damages, yet the instructions upon that subject were perhaps not as clear and concise as they could be made.  We suggest to counsel to carefully read what is said in 1 Sutherland on Damages (3d Ed.) sections 54-57, and volume 3, sections 867-871, upon the question of damages in cases like the one at bar.  That question is also discussed somewhat by the Supreme Court of Maryland in *Gladfelter* v. *Walker, supra.* In *Allison* v. *Chandler,* 11 Mich. 542, there is a most instructive discussion of the question by the Supreme Court of Michigan.  The justice writing the opinion in that case goes into the subject of damages in cases of torts most thoroughly.

While we shall not pause to review the case, nor are we prepared to adopt all that is there said, yet we think both court and counsel will find that case instructive and helpful in formulating proper instructions upon the question of damages.

What we have already said also disposes of the question with regard to misjoinder of parties defendant and that the evidence is insufficient to sustain the verdict and judgment against all of them.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Salt Lake county, with directions to grant a new trial; appellants to recover costs on appeal.

STRAUP, C. J., and McCARTY, J., concur.