KENNETH L. THOMAS, APPELLANT, V. COUNTRYSIDE OF HASTINGS,
INC., APPELLEE.
ELAINE R. THOMAS, APPELLANT, V. COUNTRYSIDE OF HASTINGS,
INC., APPELLEE.
KENNETH L. THOMAS AND ELAINE R. THOMAS, APPELLANTS, V.
COUNTRYSIDE OF HASTINGS, INC., APPELLEE.

512 N.W.2d 660

Filed March 1, 1994.   Nos. A-92-647, A-92-648, A-92-649.

John S. Mingus, of Mingus & Mingus, for appellants.

Roger G. Steele, of Luebs, Beltzer, Leininger, Smith & Busick, for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

The district court dismissed the petitions of Kenneth L. Thomas and Elaine R. Thomas on the grounds that their causes of action against Countryside of Hastings, Inc., a mobile home dealership, are barred by the statute of limitations. The Thomases brought suit against Countryside alleging negligent installation of a furnace in their mobile home. The Thomases each sued individually for loss of consortium and for personal injuries, and both Elaine and Kenneth sued for physical damages to the mobile home. These three actions have been consolidated for purposes of this appeal. The district court found that the Thomases' petitions had to be filed within 4 years from the time of tendered delivery of the mobile home. We conclude that the sale of a mobile home is a sale of goods under the Nebraska Uniform Commercial Code, that the predominant purpose of the Thomas-Countryside agreement was the sale of goods, and that as a result, the code's statute of limitations controls. Therefore, we affirm the dismissals.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 3, 1979, the Thomases entered into a written purchase agreement with Countryside to buy a double-wide mobile home, sometimes called a modular home. The home was manufactured by Kit Manufacturing Company of McPherson, Kansas. The purchase agreement included a provision that the mobile home would be delivered and set up on a basement foundation and that it would include such extras as a "dishwasher-disposal," patio doors, and a septic tank, all of which would be installed. In addition, the agreement provided that Countryside would install an upflow furnace in

the basement. The total price of the contract was $37,589.85, and no separate amount was assigned to the furnace installation. The mobile home, as manufactured, included a closet downflow furnace. The Thomases allege in their petitions that when Countryside installed the upflow furnace, the venting pipe was not properly connected to a chimney or otherwise vented to the outside, but instead, the venting pipe terminated between the ceiling of a closet and the roof sheeting. The Thomases claim that as a result of Countryside's alleged negligence, their mobile home sustained damages from the improperly vented furnace, and they both sustained personal injuries from inhalation of carbon monoxide.

Countryside's position is that the sale of a mobile home is the sale of a good and that the installation of the furnace, although a service, was merely an incidental part of the sale of the mobile home. Therefore, Countryside argues, the Thomases' causes of action are governed by the Nebraska Uniform Commercial Code and barred by the statute of limitations found therein. The district court bifurcated the actions and held a trial solely on the issue of the statute of limitations, as is allowed under Neb. Rev. Stat. § 25-221 (Reissue 1989). The district court held that the Thomases' petitions are barred by the statute of limitations found at Neb. U.C.C. § 2-725 (Reissue 1980).

## STANDARD OF REVIEW

■ In reviewing the district court's judgment on the issue of the statute of limitations, the findings and decision of the district court will not be set aside unless clearly wrong. *Frezell v. Iwersen*, 231 Neb. 365, 436 N.W.2d 194 (1989); *McCook Equity Exch. v. Cooperative Serv. Co.*, 230 Neb. 758, 433 N.W.2d 509 (1988).

## ASSIGNMENTS OF ERROR

The Thomases make numerous assignments in their briefs which merely restate the same basic assignment of error: The district court erred in holding that the Thomases' actions were barred by the statute of limitations found in § 2-725. The Thomases also allege that the district court ruling deprives them of various rights under the U.S. and Nebraska Constitutions. However, those assignments of error were not discussed, which

is necessary before this court will consider such assignments of error. See *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991). Accordingly, we do not address those assignments.

## ANALYSIS

A rule which we bear in mind throughout our analysis is that to determine the applicable statute of limitations, "[a] special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject." *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 278, 481 N.W.2d 422, 426 (1992).

We first deal with the Thomases' argument that the statute of limitations found in Neb. Rev. Stat. § 25-223 (Reissue 1989) concerning actions for breach of warranty on improvements to real estate should control. Under that statute, a suit can be brought within 4 years of the breach or deficiency or within 2 years after its discovery. However, § 25-223 has been construed to be a special statute of limitations applying to builders or contractors. *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). The Supreme Court in *Georgetowne Ltd. Part.* relied upon the legislative history, which showed that Senator John J. Cavanaugh III testified that the purpose of the legislation was to secure a specific statute of limitations concerning home warranties and the construction of homes, separate and apart from the statute of limitations for professionals such as architects in Neb. Rev. Stat. § 25-222 (Reissue 1989). Thus, since Countryside is not a constructor or builder of homes, but is a retailer or seller of already constructed mobile or modular homes, it is clear that § 25-223 has no application whatsoever to these cases. See, also, *Murphy v. v. Spelts-Schultz Lumber Co., supra*.

Section 2-725(1) provides that actions for breach of contract for sale must be commenced within 4 years after the cause of action accrues, and under § 2-725(2), the cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Section 2-725(2) further provides that a breach of warranty occurs when tender

of delivery is made and that a tolling of such limitations occurs only if an express warranty is made which extends explicitly to future performance of the goods and if discovery of a breach must await the time of such performance, in which case the action accrues when the breach is or should have been discovered. The evidence shows that the furnace was installed in the Thomases' home no later than December 1979 and that these actions were not filed until January 3, 1986. Therefore, if the causes of action arise from the sale of goods, and if the evidence shows there is no express warranty regarding future performance, the Thomases' causes of action are barred by the statute of limitations found in § 2-725. If the general statute of limitations for tort actions, with tolling pending discovery, were applicable, the actions would not be barred.

Therefore, our decision turns on whether the causes of action pleaded by the Thomases rest in tort or in contract. The Supreme Court has held that

> [a]lthough the dividing line between breaches of contracts and torts is often dim and uncertain, it has been said that the character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to the facts which constitute the cause of action.

*Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 437, 345 N.W.2d 300, 304-05 (1984). The decision whether a suit is an action for breach of contract or a tort action is based on the origin of the duty owed to the plaintiff and the wrong for which the plaintiff seeks redress. As the court held in *L. J. Vontz Constr. Co. v. State*, 230 Neb. 377, 382-83, 432 N.W.2d 7, 11 (1988):

> Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises, whereas tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property.

In the case at hand, the only duty owed by Countryside to the

Thomases was to perform under the contract. The Supreme Court in *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958), highlighted the matter by quoting *Atlanta Gas Light Co. v. Newman*, 88 Ga. App. 252, 76 S.E.2d 536 (1953), in which the court said that " ' "[w]here the breach complained of is simply the neglect of a duty such as is expressly provided for by the contract itself, the action will be construed and treated as one brought ex contractu." . . .' " 166 Neb. at 195, 88 N.W.2d at 653. The Thomases had an interest in or a right to Countryside's performance under the contract. Therefore, the Thomases' actions rest in contract law because they are based upon neglect of a contracted duty which exists only by virtue of the written agreement between the Thomases and Countryside. Stated otherwise, but for the written agreement, Countryside had no obligation to properly install a furnace in the mobile home.

■ Therefore, we must next decide whether the Thomases' causes of action are based on a sale of goods, and therefore fall under the Nebraska Uniform Commercial Code, or whether the contract is for a service, which would fall outside the code. Neb. U.C.C. § 2-105 (Reissue 1992) defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." While the Nebraska Supreme Court has not yet ruled on the issue, other courts have found that a mobile home is a good, and therefore, that the sale of a mobile home is governed by the Uniform Commercial Code. See, *Osburn v. Bendix Home Systems, Inc.*, 613 P.2d 445 (Okla. 1980); *Linscott v. Smith*, 3 Kan. App. 2d 1, 587 P.2d 1271 (1978); *Duffee v. Judson*, 251 Pa. Super. 406, 380 A.2d 843 (1977); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976); *Jones et al. v. Abriani*, 169 Ind. App. 556, 350 N.E.2d 635 (1976); *Apeco Corporation v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex. Civ. App. 1974). After being sold to the Thomases, this home was moved from Hastings to land near Boelus. Given the foregoing authorities, and the obviously movable nature of the "mobile home," we conclude that a mobile home or modular home is a good under the Nebraska Uniform Commercial Code.

596

█ The Thomases claim that they were damaged by the negligent installation of their furnace by Countryside. If the transaction at issue was really a contract for the rendering of a service, rather than a contract for the sale of goods, then the provisions of Neb. U.C.C. art. 2 (Reissues 1980 & 1992) do not apply.

> The cases are uniform in holding that the U.C.C. applies where the principal purpose of the contract is the sale of goods, even though in order for the goods to be utilized, some installation is required. . . .
>
> The test for inclusion in or exclusion from the sales provisions is not whether the contracts are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved, or whether they are transactions of sale, with labor incidentally involved.

*Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 307-08, 363 N.W.2d 155, 160 (1985). Examination of the contract and the evidence before the district court certainly allowed the district court to conclude that the predominant feature of the contract was the sale of the mobile home, with the hookup and installation of utilities such as a hot water heater, dishwasher, and furnace as incidental conditions of the contract. Clearly, the predominate purpose of the agreement was the sale of the mobile home. Labor for installation of the furnace, although a service, was only incidentally involved. Therefore, the statute of limitations found in § 2-725(1) and (2) bars the actions of the Thomases, unless there was an express warranty extending explicitly to future performance of the goods, which would toll the statute of limitations until the damage or injury was discovered.

█ With respect to express warranties, Neb. U.C.C. § 2-313 (Reissue 1992) provides in part that

(1) [e]xpress warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty

that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

The Supreme Court has held that a warranty "is express when the seller makes an affirmation with respect to the article to be sold, pending the agreement of sale, upon which it is intended that the buyer shall rely in making the purchase." *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. at 310-11, 363 N.W.2d at 161-62. The written agreement contains no affirmation regarding the mobile home, the furnace, or its installation on which Countryside intended that the Thomases rely when they purchased the mobile home, nor is any other such evidence to be found in the record which arguably created an express warranty. Therefore, as there is no evidence of an express warranty which would condition the beginning of the running of the statute of limitations upon discovery, we find that the statute of limitations began to run on the date of tender of delivery, which the evidence shows was no later than December 20, 1979. See *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). Therefore, a cause of action based on a contractual provision that Countryside install a furnace must have been filed within 4 years of the date of tender of delivery. Because these actions were filed more than 6 years after tender of delivery, the Thomases' causes of action are barred by the 4-year statute of limitations found in § 2-725. The factual findings implicit in the district court's ruling are not clearly wrong, and the district court correctly held that the Thomases' causes of action are barred by the statute of limitations found in § 2-725.

AFFIRMED.