Loretta Penfold RECORDS, aka Loretta Gallent, Plaintiff and Appellee,

v.

Gary M. BRIGGS, Defendant and Appellant.

No. 930776–CA.

Court of Appeals of Utah.

Dec. 13, 1994.

George W. Preston and Joseph M. Chambers, Preston & Chambers, Logan, for appellant.

Gary N. Anderson, Hillyard, Anderson & Olsen, Logan, for appellee.

Before BILLINGS, ORME and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Gary Briggs appeals the grant of summary judgment against him in favor of Loretta Gallent. We reverse the summary judgment and remand to the trial court for further proceedings.

## BACKGROUND

In 1981, Gary Briggs, then a resident of California, purchased a limited partnership interest in Crane Development, Ltd. Briggs purchased his interest with $57,750 cash and a promissory note (Crane note) for $70,882, due and payable to the general partner in November 1990. Crane Development, a Louisiana limited partnership, was created for the funding and development of a crane simulator to be used for training crane operators. At the time relevant to the present case, Simulator Research, Inc. was Crane Development's general partner. Also at the time, Loretta Records, now known as Loretta Gallent, was the majority shareholder of Simulator Research.

Shortly after the formation of the partnership, Crane Development entered an agreement with Digicrane, Inc.[1] to provide to Digitran the necessary research and development for the simulators and, in return, to receive royalties from Digitran on the simulator sales. At all times relevant to this action, Gallent also served as president of Digitran.

On April 1, 1986, Digitran offered Briggs an option to discount the Crane note and purchase Briggs's partnership interest. In exchange for $30,400 cash and transfer of the partnership interest, Briggs was to receive 40,533 shares of Digitran stock and a release from any obligation on the Crane note. Briggs, a resident of Colorado at the time, exercised his option to discount the Crane note on April 30, 1986.

Originally, the Digitran stock was to be delivered in June 1986, but Digitran apparently experienced legal difficulties in issuing the new shares. Finally, in October 1987, Briggs went to Louisiana and complained to Gallent that Digitran had not delivered the stock owed him nor paid to Crane Development royalties on simulator sales. In order to satisfy Briggs, Gallent executed an irrevocable stock power and delivered to Briggs a stock certificate representing 32,190 shares of her personal Digitran stock. Gallent gave her stock to Briggs as collateral to secure performance of Digitran's obligations to him. Briggs returned to Colorado, and subsequently moved to Texas.

In March 1988, Briggs complained that he still had not received the Digitran stock owed him. Digitran then paid Briggs interest on the $30,400 he had advanced in 1986.

Finally, on November 22, 1988, Digitran issued the 40,533 shares due to Briggs. Gallent then asked her secretary to retrieve her personal shares from Briggs. Apparently, no real efforts were made to recover the pledged stock at this time. Later that month, Gallent and Digitran relocated to Logan, Utah.

In September 1989 and thereafter, Briggs continued to complain to Gallent that he had not received his share of royalties owed by Digitran to Crane Development. Finally, in August 1990, Briggs had the certificate representing the pledged shares of stock transferred from Gallent's name to his own.

On January 3, 1992, Gallent filed a complaint against Briggs in Utah, charging Briggs with breach of their pledge agreement and conversion of her personal shares. Briggs filed a motion to join Digitran, Crane Development, and others as indispensable

---

1. Digicrane, Inc. is a Louisiana corporation and a wholly owned subsidiary of Digitran, Inc. Since the parties are unclear as to whether Digicrane or Digitran was party to various transactions, and because the distinction is not pertinent to this appeal, we will simply refer to Digicrane/Digitran as Digitran.

parties to the action. The trial court denied the motion. Subsequently, Briggs filed a motion for summary judgment, claiming that the statute of limitations had run on Gallent's action. Gallent then filed a cross-motion for summary judgment against Briggs. The trial court denied Briggs's motion, concluding that none of the possible statutes of limitations that might apply had run on Gallent's cause of action. The trial court did, however, grant Gallent's motion for summary judgment against Briggs. Briggs appeals.

## ISSUES ON APPEAL

Briggs bases his appeal on the grounds that the trial court (1) erred in concluding that Gallent's claim was not barred by the applicable statute of limitations, (2) erred in granting summary judgment because a genuine issue of material fact remains to be resolved, (3) incorrectly based the summary judgment on evidence received in violation of the parol evidence rule, (4) incorrectly considered an exhibit introduced by Gallent to be binding on Briggs even though the document fails to satisfy the statute of frauds, and (5) abused its discretion in failing to join indispensable parties to the action.

## ANALYSIS

### I. Conflict of Laws Problem

■ The parties dispute which state's law applies to this case as a whole and to the limitations issue in particular. The trial court made no express determination on the matter. Nevertheless, the question of which state's law should apply to a case or to a particular issue is a question of law, and we would accord no deference to the trial court's conclusion in any event. *Shaw v. Layton Constr. Co.*, 872 P.2d 1059, 1061 (Utah App. 1994).

2. In addition, because we remand for trial, the trial court needs to know which state's substantive law applies to the case.

3. Under this type of approach, we attempt to determine which state has the most significant relationship to the case in question. The Restatement (Second) lists certain factors which a court needs to consider to make this determination. These express factors vary with the type of action brought (i.e., tort claims, contract claims,

Since Louisiana, Texas, and Utah could all claim some interest in the present case, we must resolve whose substantive law applies. This determination is necessary because statutes of limitation can be either substantive or procedural in nature. *See Rhoades v. Wright*, 622 P.2d 343, 349 (Utah 1980). Accordingly, we must first determine which state's substantive law applies and then decide whether that state's applicable statute of limitation should be considered substantive or procedural. Furthermore, even if the statute is merely procedural in nature, we need to know whether that state's limitation period has run on Gallent's cause of action because Utah's "borrowing statute" serves to bar in this state any cause of action that has arisen in another state and would be time barred in that state. Utah Code Ann. § 78–12–45 (1992).[2]

■ Because Utah is the forum state, Utah's choice of law rules determine the outcome of the conflict. *Shaw*, 872 P.2d at 1063. We apply the "most significant relationship" approach, as described in the Restatement (Second) of Conflict of Laws, in determining which state's law should apply in actions involving torts, contracts, property interests, and the like.[3] *See, e.g., Forsman v. Forsman*, 779 P.2d 218, 219–20 (Utah 1989) (applying "most significant relationship" analysis to torts case).

For many years, Utah followed the *lex loci*[4] approach to resolving conflicts, as set forth in the first Restatement of Conflict of Laws. *See, e.g., Velasquez v. Greyhound Lines, Inc.*, 12 Utah 2d 379, 381–82, 366 P.2d 989, 991 (Utah 1961) (applying rule of *lex loci delictus*[5] regarding torts), *overruled on other grounds by Harris v. Utah Transit Auth.*, 671 P.2d 217 (Utah 1983); *Crofoot v. Thatcher*, 19 Utah 212, 213, 57 P. 171, 173 (Utah

etc.). *See* Restatement (Second) of Conflict of Laws §§ 145, 188, 222, 283, 287, 291, 294 (1971) (stating appropriate test for different categories of law).

4. The law of the place.

5. This is the shortened form of *lex loci delictus commissi*, which means "the law of the place where the tort is committed."

1899) (applying rule of *lex loci contractus*[6] regarding contracts). More recently, however-er, the Utah Supreme Court followed the "most significant relationship" torts analysis in *Forsman*, 779 P.2d at 219–20.

Accordingly, we conclude that Utah should also apply the "most significant relationship" analysis to determine the proper choice of law in contract disputes, as articulated in the Restatement (Second). We doubt that our supreme court intended to apply the new approach in tort cases alone, while retaining the old approach in all other cases.[7] Follow-ing this same reasoning, several federal cases have also concluded that Utah courts would apply the "most significant relationship" test in contract matters as well as tort matters. *See Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 129 (10th Cir.1994); *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 888 (10th Cir.1991) (concluding that, while not yet for-mally embraced by Utah courts, most signifi-cant relationship analysis would be adopted in Utah for contract cases).

## A. Characterization of the Action

■■■ To apply the "most significant rela-tionship" test, we must first characterize the nature of the cause of action. This is neces-sary because the particular factors to be considered under this approach vary accord-ing to the type of action brought.[8] Gallent argues that the present case should be char-acterized as a contract matter, while Briggs argues that it is a personal property or tort matter. "[T]he characterization of an action must be made in accordance with the law of the forum." *Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 611 (9th Cir.1975). In charac-terizing a cause of action, Utah courts look to the nature of the action and not the pleading labels chosen. Accordingly, we are most concerned with the true nature of the wrong and the injury as evidenced in the substance of the pleadings. *See, e.g., Davidson Lum-ber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 14 (Utah 1990) (court should look to nature of action and not pleading labels cho-sen); *Holm v. B & M Serv., Inc.*, 661 P.2d 951, 953 (Utah 1983); *Taylor Bros. Co. v. Duden*, 112 Utah 436, 440, 188 P.2d 995, 996 (Utah 1948) (court must look to nature of cause of action); *Reese v. Qualtrough*, 48 Utah 23, 33, 156 P. 955, 959 (1916) ("Neither the form of the proceeding nor the name applied to it can change the nature of the wrong or the injury.").[9]

---

6. The law of the place where the contract was made, or by which the contract is governed.

7. It is important to note that the Utah Supreme Court has already followed various rules estab-lished in the Restatement (Second) Conflict of Laws in another contract matter, in determining the validity of a choice-of-forum provision by which the parties expressly agreed that New York law would apply. *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811–12 (Utah 1993). The Restatement (Second)'s provisions have also been recently relied on in *Pan Energy v. Martin*, 813 P.2d 1142, 1145–46 (Utah 1991), and *In re Adoption of Halloway*, 732 P.2d 962, 966–67 (Utah 1986).

8. "[I]t would be wholly illogical to pass on the ultimate choice of law question before the action is properly [characterized]." *Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 610 (9th Cir.1975). See 16 Am.Jur.2d *Conflict of Laws* § 3, which states:

In a conflict of laws situation, a court must determine at the outset whether the problem presented to it for solution relates to torts, contracts, property, or some other field, ... in order to refer to the appropriate law; that is,

the court initially must ... go through the process of determining the nature of the prob-lem, because otherwise it will not know which choice-of-law rule to apply to the case.

9. The cases cited deal with characterizing a cause of action for the purpose of determining the applicability of a particular statute of limita-tion or other statute. Even so, characterizing an action for a conflicts analysis is no different. Our approach is consistent with how other courts typically characterize actions. *See, e.g., Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010, 1014–15 (App.1989) (in determining nature of action, court must look to substance of allega-tions, not the labels attached to them); *Schulz v. Honsador, Inc.*, 67 Haw. 433, 690 P.2d 279, 282 (1984) (nature of right or claim is determined from facts stated, issues raised, and allegations contained in pleadings); *Li v. Feldt*, 187 Mich. App. 475, 468 N.W.2d 268, 269 (1991) (court not strictly bound by label affixed to claim, but may look beyond label to determine exact nature of allegation made); *Thomas v. Countryside of Has-tings, Inc.*, 2 Neb.App. 590, 512 N.W.2d 660, 664 (1994) (character of action is determined by na-ture of grievance, not by form of pleadings, with consideration being given to facts which consti-tute cause of action); *Gazija v. Nicholas Jerns*

Gallent clearly bases her complaint on an oral agreement between Briggs and herself as to the purpose behind giving Briggs her stock. In the complaint, Gallent states that she agreed to transfer to Briggs some of her personal stock to secure Digitran's promises to relieve Briggs from liability on the Crane note and to transfer to him the Digitran shares. The complaint further alleges that Gallent delivered her personal shares to Briggs in accordance with the agreement, that Briggs received the performance owed from Digitran, and that Briggs failed to return the pledged stock to Gallent even though the conditions for return of the stock had been satisfied. Accordingly, the complaint alleges that Briggs breached the agreement with Gallent in failing to return the stock and prays for a judgment ordering the return of the stock and all accrued benefits to Gallent or, in the alternative, judgment for money damages in the appropriate amount.

■ Essentially, Gallent alleges the breach of promises orally agreed to by the parties. The Utah Supreme Court has followed the rule that "if the cause of action arises from a breach of *a promise set forth in* the contract, the action is *ex contractu*, but if it arises from a breach of *duty growing out of* the contract it is *ex delicto*."[10] *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 435 (Utah 1983) (emphasis omitted in part) (quoting *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 843–44, 610 P.2d 1330, 1334 (1980)).[11] We agree with the trial court that this is a contract case.

Briggs asserts that because Gallent's complaint also suggests that Briggs "converted" her stock and seeks the recovery of her personal property, that the action becomes a conversion action, sounding in tort. Nevertheless, Briggs's obligation to return the stock arose from the express agreement of the parties and not from some legal duty independently imposed or impliedly growing out of the contract.[12] Gallent's action clearly sounds in contract rather than tort.

### B. "Most Significant Relationship" Approach

■ The next step in deciding which state's substantive law applies to this dispute is to determine which state "has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971). The Restatement (Second) outlines certain facts to be evaluated in making this determination relative to a cause of action arising in contract. These include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of business of the parties." *Id.* § 188(2).

Briggs first went to Louisiana, where he negotiated with Gallent and entered into the oral agreement by which the stock was pledged as security. Digitran performed its alleged final obligation when it sent the stock from its place of business in Louisiana to Briggs. Briggs had allegedly agreed to return Gallent's stock to her in Louisiana. The pledged stock was taken by Briggs from Louisiana to Colorado and later to Texas. The Digitran stock owed to Briggs remained in Louisiana until it was eventually delivered to Briggs. Finally, while Briggs resided in Colorado and Texas, Gallent resided in Louisiana. Louisiana was also Digitran's place of

Co., 86 Wash.2d 215, 543 P.2d 338, 340 (1975) (nature of action is determined from pleadings and complaint as a whole and from the evidence relied upon, not by particular words and allegations, form adopted by pleader, or understanding of counsel or trial court).

10. *Ex contractu* means "from or out of a contract." *Ex delicto* means "from a delict or tort."

11. The court in *DCR Inc.* also relied on Professor Prosser's explanation that "[c]ontract actions are created to protect the interest in having promises performed." *Id.* (quoting Prosser, Law of Torts

613 (4th ed. 1971)). On the other hand, "[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties." *Id.*

12. *See Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1372 (Utah 1987) (reasoning that BYU's action sounded in contract rather than tort because, absent contractual obligations between the parties, contractors had no obligation to BYU).

business. Gallent and Digitran remained in Louisiana through final performance of their part of the agreement, only later moving to Utah.[13]

Various elements of the agreement have relationships to Colorado, Texas and Louisiana. However, most of the significant parties were residents of Louisiana during times relevant to the agreement; the pledge contract between Briggs and Gallent was negotiated and entered into in Louisiana; and the final performance by both parties was originally expected to take place in Louisiana. We thus conclude that Louisiana has the most significant relationship with the parties and the agreement. Therefore, Gallent's cause of action arose under Louisiana law, and that state's substantive law applies to this action.

## II. Statute of Limitations

 Having determined that Louisiana's substantive law applies, we next look to Louisiana's applicable statute of limitations. In Louisiana, a suit for breach of a pledge agreement is considered a contract action and is subject to the ten-year prescriptive period provided in La.Civ.Code Ann. art. 3499 (West 1994). *Hyde v. Hibernia Nat'l Bank*, 584 So.2d 1181, 1186 (La.App.1991); *Franklin v. Bridges Loan & Inv. Co.*, 371 So.2d 294, 295 (La.App.1979). We conclude that the Louisiana statute is not substantive.[14]

 More often, "[s]tatutes of limitations are essentially procedural in nature and [merely] establish a prescribed time within which an action must be filed after it accrues. They do not abolish a substantive right to sue. . . ." *Lee v. Gaufin*, 867 P.2d 572, 575 (Utah 1993). For this reason, Utah courts have concluded that "under a general conflict of laws analysis, the limitations period of the forum applies." *Jackett v. Los Angeles Dep't of Water & Power*, 771 P.2d 1074, 1075–76 (Utah App.1989) (applying the California limitations period, however, under doctrine of comity); *see also Pan Energy v. Martin*, 813 P.2d 1142, 1145–46 (Utah 1991) (applying Utah's statute of limitations to an action to enforce a foreign judgment, stating that full faith and credit is not denied by applying local *procedural* law).

 Gallent's claim is based on Briggs's alleged breach of an oral pledge agreement. As the forum state, Utah's limitation period applies. Section 78–12–25(1) of the Utah Code sets the limitations period for actions "upon a contract, obligation, or liability not founded upon an instrument in writing" at four years. The earliest point at which Gallent's cause of action could have accrued was November 22, 1988, when Briggs received the stock owed from Digitran, allegedly satisfying the condition necessary for the return of Gallent's stock. Gallent filed her complaint on January 3, 1992, within the four-year limitations period. The trial court correctly determined that Gallent's cause of action was not time barred.[15]

---

13. In addition, Briggs claims that the pledged stock also secured payment by Digitran of royalties owed to him through his interest in Crane Development. Crane Development was a Louisiana limited partnership, with its principal place of business in that state.

14. Article 3499 merely provides the general prescriptive period for a "personal action" unless Louisiana's legislature has established a different prescriptive period for a specific action or has declared such an action imprescriptible. La. Civ.Code Ann. art. 3499 (West 1994).

We agree with the federal district court in Utah, which has concluded that "[t]o qualify as a substantive limit, the statute of limitations must be contained within the same statute or act which created the cause of action, making the limitations period integral to the right." *Arnold v. Duchesne County*, 810 F.Supp. 1239, 1244 (D.Utah 1993). Furthermore, even when a

state's statute of limitations is contained within the same statute giving the right of action, Utah courts will further look to the characteristics attributed to the statute of limitations by the other state to determine the statute's procedural or substantive nature. *Rhoades v. Wright*, 622 P.2d 343, 349 (Utah 1980).

However, the Louisiana limitations period applicable to Gallent's claim in this case is in no way integrally connected to the law giving her a right of action. *See* La. Civ.Code Ann. art. 3499 (West 1994).

15. The parties have directed our attention to Utah's "borrowing statute," Utah Code Ann. § 78–12–45 (1992). However, it does not apply to the present case because Gallent's cause of action is not barred in Louisiana, under whose law the action arose. *See* La.Civ.Code Ann. art. 3499 (West 1994) (establishing ten-year prescriptive period for this type of action).

## III. Genuine Issue of Material Fact

Briggs also asserts that the trial court erred in granting summary judgment in favor of Gallent because a genuine issue of material fact remains to be resolved. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Republic Group v. Won–Door Corp.*, 883 P.2d 285, 288–90 (Utah App.1994). Accordingly, whether a party is entitled to summary judgment is a question of law reviewed for correctness. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). "We accord no deference to the trial court's conclusion that the facts are not in dispute nor the court's legal conclusions based on those facts." *Western Farm Credit Bank v. Pratt*, 860 P.2d 376, 378 (Utah App.1993) (quoting *Kitchen v. Cal Gas Co.*, 821 P.2d 458, 460 (Utah App.1991)), *cert. denied*, 879 P.2d 266 (Utah 1994). If we find a material factual issue, we must reverse the grant of summary judgment. *Id.* at 378.

Briggs testified at his deposition that Gallent's stock was given to him "as security that good faith performance would be followed through with by Digitran." Briggs further testified that although negotiation for security had been initiated because he had not received the Digitran stock owed him, "[t]here had been numerous other [non]performances, and the return of the stock was not specifically tied to [the receipt of Digitran stock.]" When questioned as to what other obligations needed to be satisfied under the pledge agreement before Gallent would be entitled to return of her stock, Briggs testified that "it is primarily tied to the payment of royalty moneys owed [him] as a result of the simulator development and the manufacture and sale."

The deposition testimony of Briggs was before the trial court for review as part of the cross-motions for summary judgment. The trial court, in conjunction with its decision to grant Gallent's motion for summary judgment, explained the conflict regarding a material fact, namely the terms of the oral pledge agreement, saying:

> The Court has examined the evidence relating to the transaction between [Gallent] and [Briggs] and finds that there is sufficient question as to why these shares of stock were transferred to support the admission of other evidence explaining the context and understanding of the parties at the time of transfer.

The court also recognized that Briggs "claims [Gallent's shares] were to act as security not only for the [Digitran stock owed], but to ensure good faith efforts from the company for other difficulties [he] was having, particularly the payment of royalties from Digicrane."

Generally, when contract interpretation will be determined by extrinsic evidence of intent, it becomes a question of fact. *Republic Group*, 883 P.2d at 293–95. Accordingly, if this extrinsic evidence is disputed, then a material fact is also disputed, and summary judgment cannot be granted. *Fashion Place Inv., Ltd. v. Salt Lake County/Salt Lake County Mental Health*, 776 P.2d 941, 943 (Utah App.) (establishing that when trial court relies on extrinsic evidence to interpret a contract, appellate court can affirm summary judgment only if *undisputed* material facts, concerning parties' intent, demonstrate successful litigant's position is correct as a matter of law), *cert. denied*, 783 P.2d 53 (Utah 1989). Briggs's deposition testimony clearly creates a factual dispute as to what performance the pledged stock was intended to secure. The trial court's own analysis acknowledges this dispute. Although the trial court apparently discounted Briggs's testimony, "[o]ne sworn statement under oath [involving a material fact] is all that is necessary to create a factual issue, thereby precluding summary judgment." *Pratt*, 860 P.2d at 378 (quoting *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 957 (Utah App.1989)).

Thus, a genuine issue of material fact does exist. The trier of fact needs to determine what performance by Digitran the parties intended Gallent's personal stock to secure. Therefore, we reverse the trial court's grant of summary judgment and remand for trial.

## IV. Remaining Issues on Appeal

Because we reverse the trial court's grant of summary judgment on other grounds, we

do not address Briggs's claim that the trial court incorrectly based the summary judgment on evidence received in violation of the parol evidence rule. Nor do we address his claim that the trial court incorrectly considered binding an exhibit he claims fails to satisfy the statute of frauds.

Further, we see no merit in Briggs's claim that the trial court abused its discretion in failing to join alleged indispensable parties to the action. *See Seftel v. Capital City Bank,* 767 P.2d 941, 944–45 (Utah App. 1989) (stating that a trial court's determination of whether or not to join parties ordinarily will not be disturbed absent abuse of discretion), *aff'd sub nom., Landes v. Capital City Bank,* 795 P.2d 1127 (Utah 1990).

## CONCLUSION

Louisiana's substantive law and Utah's procedural law apply to this action. Accordingly, Utah's four-year statute of limitations applies, and the trial court correctly concluded that Gallent's action was not time barred. However, a genuine issue of material fact remains concerning exactly what performance the pledged stock was to secure. Accordingly, we reverse the grant of summary judgment against Briggs and remand to the trial court.

BILLINGS and ORME, JJ., concur.