[No. 43662.  En Banc.  December 11, 1975.]

LOUIS GAZIJA, *Respondent*, v. NICHOLAS JERNS COMPANY, *Petitioner*.

*Robert K. Waitt* (of *Murray, Dunham & Waitt*), for petitioner.

*Dodd, Hamlin & Coney, P.S.,* by *Robert E. Ordal,* for respondent.

UTTER, J.—Louis Gazija, a commercial fisherman, sought to recover damages for loss of nets and other fishing gear from the Jerns Company, his insurance agent, for its alleged tortious cancellation of an insurance policy covering this gear. A judgment based on a jury verdict was entered in favor of respondent Gazija and affirmed by the Court of Appeals. We granted review solely on the issue of whether respondent's action was barred by the statute of limitations.

Gazija began fishing in 1954 and obtained an "inland marine floater" policy from petitioner, providing insurance coverage for his gear whether on the boat or in storage. His father, also a fisherman, insured his separate fishing gear while it was in storage under a "web house" policy provided by petitioner. Because respondent was fishing 12 months each year, he did not have a "web house" policy, but continued to carry his "floater" policy after purchasing his first boat in 1958. Respondent's father died in 1962 and the deceased's "web house" policy was endorsed over to respondent's mother and renewed for 3 years in her name on December 3, 1962. When this policy expired on December 3, 1965, a renewal policy was issued to respondent. Respondent's own "floater" policy was renewed on January

3, 1964, and ran until January 3, 1967, when a renewal premium was due.

The facts surrounding events after this point are disputed. Petitioner testified that respondent cancelled the "floater" policy and respondent denies he authorized cancellation. The jury resolved this dispute in favor of respondent. The "floater" policy was, in fact, cancelled by petitioner on January 17, 1966, and the "web house" policy remained in effect until 1970. In March 1970, respondent lost all his fishing gear on his boat when it sank and, at that time, respondent claims he first learned this gear was not covered by an insurance policy. Under the terms of the "web house" policy, the sole policy then in force, only the fishing gear in storage at a specified location was covered. Respondent then brought suit to recover the value of his lost gear from petitioner.

Petitioner claims that under either RCW 4.16.080 (2) providing a 3-year statute of limitation "for any other injury to the person or rights of another not hereinafter enumerated," or RCW 4.16.130, providing a 2-year period of limitation for "[a]n action . . . not hereinbefore provided for," respondent's claim is barred. Respondent, on the other hand, claims his action sounds in tort and that therefore the statutes of limitation begin to run from the time of the negligent act or omission if harm is apparent or, if not apparent, from the time the harm is discovered. *Cf. Samuelson v. Freeman*, 75 Wn.2d 894, 901, 454 P.2d 406 (1969).

■ Something more is required to make a cause of action sound in tort than simply denominating it as such. As noted in W. Prosser, *Law of Torts* § 92, at 614 (4th ed. 1971):

> The relation between the remedies in contract and tort presents a very confusing field, still in process of development, in which few courts have made any attempt to chart a path.

(Footnote omitted.) To the extent that it has been charted, courts have distinguished between "nonfeasance" which means doing nothing at all and "misfeasance" which means

doing it improperly. Prosser, *supra* at 614. This distinction was followed in *Lewis v. Scott*, 54 Wn.2d 851, 858, 341 P.2d 488 (1959), where we imposed liability on a duty the court recognized as arising from the wrongdoer performing his work negligently which resulted in injury to others. We stressed, at page 859, that the action was " 'based not upon contract but upon negligence.' " Whether an action sounds in contract or tort is determined from the pleadings and complaint as a whole and the evidence relied upon, not by particular words and allegations, the form adopted by the pleader, what the pleader calls it, or the understanding of counsel or the trial court. *Yeager v. Dunnavan*, 26 Wn.2d 559, 562, 174 P.2d 755 (1946); *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 595, 277 P.2d 708 (1954).

In our early case of *Shaw v. Rogers & Rogers*, 117 Wash. 161, 200 P. 1090 (1921), an insurance agent failed to write plaintiff's policy with a solvent insurer. Plaintiff applied for and obtained insurance on August 26, 1915. On February 5, 1916, plaintiff's building was destroyed by fire and on February 22 the insurance company with whom the insurance was placed became insolvent. Plaintiff commenced his action on January 4, 1919, and the court held the cause of action arose immediately upon failure of the defendant to write insurance with a solvent company. It concluded the action was barred by the 3-year statute of limitations and refused to hold the cause of action accrued when damages arose from the fire that destroyed the building. The court did not state whether plaintiff proceeded under a tort or contract theory, but relied on an earlier contract case for the controlling principle. The result reached by the court in *Shaw* forced it to recognize

> that the amount of damages which could have been recovered had the action been brought immediately upon the breach of the duty, and the amount which was susceptible of the recovery after the fire were different, but it is not material that all the damages resulting from the act should not have been sustained at the time the breach of duty occurred, and the running of the statute is not

postponed by the fact that actual or substantial damages do not occur until a later date.

*Shaw v. Rogers & Rogers, supra* at 163.

Subsequent cases are not helpful in determining whether *Shaw* is to be considered as a tort or contract case. *Robinson v. Davis*, 158 Wash. 556, 560, 291 P. 711 (1930); *Calhoun v. Washington Veneer Co.*, 170 Wash. 152, 160, 15 P.2d 943 (1932); *Peeples v. Hayes*, 4 Wn.2d 253, 255, 104 P.2d 305 (1940). To the extent the result in *Shaw* can be ascribed to a characterization of the cause of action as one sounding in tort, we believe the result reached there is incorrect.

Statutes of limitation do not begin to run until a cause of action has "accrued." RCW 4.16.010. In most circumstances, a cause of action accrues when its holder has the right to apply to a court for relief. *Lybecker v. United Pac. Ins. Co.*, 67 Wn.2d 11, 15, 406 P.2d 945 (1965); *State ex rel. McMillan v. Miller*, 108 Wash. 390, 400, 184 P. 352 (1919). Actual loss or damage is an essential element in the formulation of the traditional elements necessary for a cause of action in negligence. *Lewis v. Scott, supra* at 856; *Lindquist v. Mullen*, 45 Wn.2d 675, 677, 277 P.2d 724 (1954); cf. Restatement (Second) of Torts §§ 281, 7 (1965). The difficulty in applying this principle to statutes of limitation problems is created by conceptualization of when the damage has occurred. *See Budd v. Nixen*, 6 Cal. 3d 195, 200-02, 491 P.2d 433, 98 Cal. Rptr. 849 (1971). The mere danger of future harm, unaccompanied by present damage, will not support a negligence action. Prosser, *supra* § 30, at 143. Until a plaintiff suffers appreciable harm as a consequence of negligence, he cannot establish a cause of action. Thus, although a right to recover nominal damages will not commence the period of limitation, the infliction of actual and appreciable damage will trigger the running of the statute of limitations. *Davies v. Krasna*, 14 Cal. 3d 502, 535 P.2d 1161, 121 Cal. Rptr. 705 (1975).

While in many instances damage occurs and the action

accrues immediately upon the occurrence of the wrongful act, this is not always true. In circumstances where some harm is sustained, but the plaintiff is unaware of it, a literal application of the statute of limitations may result in grave injustice. Courts have avoided this consequence of older cases like *Shaw* by adopting the fictions of continuing negligence, fraudulent concealment or constructive fraud. There is now a wave of modern decisions which abandon these fictions and these simply hold that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it. Prosser, *supra* § 30, at 144-45; *Janisch v. Mullins*, 1 Wn. App. 393, 397, 461 P.2d 895 (1969).

■■ Bearing in mind that we are construing a limitations statute and not just a definition of a cause of action, the word "accrued" should be construed in a manner consistent with a prima facie purpose to compel the exercise of a right within a reasonable time without doing an avoidable injustice. *Janisch v. Mullins, supra* at 399. The rule holding a cause of action has not accrued until plaintiff has discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it, is designed to prevent such injustice. Petitioner argues application of this rule here is unwarranted in that this case is not like those in which the discovery rule has been adopted in this jurisdiction. He points out the dates of coverage of an insurance policy are not hidden from the customer, unlike a foreign substance after surgery as in *Ruth v. Dight*, 75 Wn.2d 660, 664, 453 P.2d 631 (1969), nor is it of a technical nature as is land surveying which was involved in *Kundahl v. Barnett*, 5 Wn. App. 227, 486 P.2d 1164 (1971). However, the dates printed on a policy would not inform the insured if the policy were wrongfully cancelled by the agent. Moreover, the Court of Appeals in *Kundahl* did not base its decision solely on the illogic of obliging a landowner to retain another surveyor to double check the accuracy of the

first survey in order to apprise himself of possible grounds for a lawsuit. The court reasoned that the accrual upon discovery rule was a fair resolution of competing factors in the case of a surveyor as it was in the case of other professional malpractice. *Kundahl v. Barnett, supra* at 230. The time of discovery rule has been applied in an action against an insurance agent. In *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 463 P.2d 770, 83 Cal. Rptr. 418 (1970), the court reasoned that the fiduciary relationship existing between an insurance company and its corporate general agent warranted application of the discovery rule in an action between those parties. *But see Cornell v. Edsen*, 78 Wash. 662, 665, 139 P. 602 (1914). In addition, the rule has been adopted in situations involving several varieties of professional malpractice apart from the medical field. *See, e.g., Moonie v. Lynch*, 256 Cal. App. 2d 361, 64 Cal. Rptr. 55 (1967) (accountant); *Diamond v. New Jersey Bell Tel. Co.*, 51 N.J. 594, 242 A.2d 622 (1968) (phone company); *Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969) (architect); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 491 P.2d 421, 98 Cal. Rptr. 837 (1971) (attorney); *Nielson v. Arizona Title Ins. & Trust Co.*, 15 Ariz. App. 29, 485 P.2d 853 (1971) (trust company); *Edwards v. Ford*, 279 So. 2d 851 (Fla. 1973) (attorney); *Hendrickson v. Sears*, ‒‒‒‒‒ Mass. ‒‒‒‒‒, 310 N.E.2d 131 (1974) (attorney); *Allred v. Bekins Wide World Serv., Inc.*, 45 Cal. App. 3d 984, 120 Cal. Rptr. 312 (1975) (moving company); *see generally* Annot., 18 A.L.R.3d 978 (1968); Annot., 26 A.L.R.3d 1438 (1969).

Fundamentally, whether or not to extend the "discovery rule" to the circumstances of this case is a judicial policy determination as it was in *Ruth, Janisch,* and *Kundahl.*[1]

---

[1] "Legislative silence . . . may indicate that the Legislature has chosen to defer to judicial experience and to repose with the judiciary the rendition of rules for the accrual of causes of action." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 192, 491 P.2d 421, 98 Cal. Rptr. 837 (1971). The California Supreme Court's observation that the history of the discovery rule demonstrates the difficulties

*Neel v. Nagana, Olney, Levy, Cathcart & Gelfand, supra* at 190-92. Against the assumptions that stale claims are more likely to be spurious and more likely to be supported by untrustworthy evidence, we must balance the unfairness of cutting off valid claims if, under the circumstances, the plaintiff would probably not know he had been injured until after the limitations period had run.[2]

> [A] fair resolution of the dilemma involves both a preservation of limitations on the time in which the action may be brought and a preservation of the remedy, too, where both parties are blameless as to delay in discovery of the asserted wrong.

*Ruth v. Dight, supra* at 666-67; *see Berry v. Branner*, 245 Ore. 307, 312, 421 P.2d 996 (1966). If actual or constructive knowledge is relevant to a purpose of the statutes of limitation other than compelling suits within a reasonable time, that purpose does not clearly appear. *Janisch v. Mullins, supra* at 399.

In this case, respondent did not sue to recover premiums wrongfully applied to the "web house" policy instead of the "floater" policy. He sought to recover the value

---

of inferring intent from legislative inaction is appropriate here as well. In 1954 this court held that the period of limitation in medical malpractice cases ran from the time of the wrongful act that caused the injury. *Lindquist v. Mullen*, 45 Wn.2d 675, 277 P.2d 724 (1954). The legislature did not amend RCW 4.16 to overturn this rule. In 1959 this court applied the rule of accrual at discovery to medical malpractice cases involving foreign substances left in surgical wounds. *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969). Subsequently, in 1971, the legislature modified the statute of limitations as it applies to actions against hospitals, physicians and others, approving the discovery rule but imposing a maximum time limitation. RCW 4.16.350. If the court in *Ruth* had reasoned that legislative inaction meant legislative approval of *Lindquist*, we might still be following the rule prohibiting accrual at discovery in medical malpractice cases.

[2]While important policy reasons support the accrual at discovery rule, we also recognize it may be desirable to place some outer limit upon the delayed accrual of actions in order to avoid an undue burden on potential defendants. The legislature may wish to enact a reasonable absolute limitation on actions like those in this case as it has in other contexts. *See* RCW 4.16.310, 4.16.350; Note, *Legal Malpractice—Is the Discovery Rule the Final Solution?*, 24 Hastings L.J. 795, 806-11 (1973).

of fishing gear lost as a proximate cause of petitioner's negligence. The appreciable harm which gave rise to his tort action did not occur until the insurer refused to indemnify respondent after his boat sank in March 1970. *See Walker v. Pacific Indem. Co.,* 183 Cal. App. 2d 513, 6 Cal. Rptr. 924 (1960); *Davies v. Krasna, supra.* We therefore hold that respondent's cause of action accrued when he first suffered actual loss and had the first opportunity by the exercise of reasonable diligence to discover he had an actionable claim for unauthorized cancellation of the "floater" policy. Thus, respondent's cause of action is not barred by the statute of limitations.

Judgment affirmed.

STAFFORD, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., and LANGSDORF, J. Pro Tem., concur.