IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LAWRENCE T. CANTRELL, | ) | No. 78171-5-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, an insurance company, | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: May 20, 2019 |

SMITH, J. — Lawrence Cantrell appeals the summary dismissal of his claims against his insurer, United Services Automobile Association (USAA), which denied his claim for underinsured motorist (UIM) insurance coverage related to a bicycle accident. Because Cantrell presented evidence that raises a genuine issue of material fact as to whether he was hit by a vehicle and entitled to UIM coverage, the trial court erred by summarily dismissing his breach of contract claim. But, Cantrell fails to raise a genuine issue of material fact that he asserted his remaining claims within the statute of limitations. Therefore, we reverse the dismissal of his breach of contract claim, affirm the dismissal of his remaining claims, and remand to the trial court for further proceedings.

## FACTS

On May 5, 2007, Cantrell, a military service member, was injured while riding his bicycle. Cantrell does not remember the accident, and there were no eye witnesses. But due to the nature of his injuries, Cantrell believes that he was

hit by a vehicle from behind. Cantrell suffered a traumatic brain injury, hemiparesis, and contusions, and spent 10 days in the hospital.

Cantrell reported the hit-and-run accident to USAA on October 5, 2007. On November 30, 2007, USAA denied Cantrell's UIM claim because it found there was no evidence that he was hit by a vehicle.

Cantrell retired from the military on December 31, 2014. In March 2015, his attorney contacted USAA to make a UIM claim for his May 5, 2007, accident. USAA reopened the claim and requested additional documentation. On January 20, 2016, USAA again denied Cantrell's claim, finding there was no evidence that he was hit by a vehicle. Cantrell filed suit against USAA on March 3, 2017, alleging claims of breach of contract; negligence; and violations of the Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015; and violations of the Consumer Protection Act (CPA), chapter 19.86 RCW.

USAA moved for summary judgment. It argued that Cantrell's breach of contract claim should be dismissed because Cantrell failed to raise a genuine issue of material fact as to whether he was hit by a vehicle and, therefore, entitled to UIM coverage. USAA also argued that summary judgment was proper as to Cantrell's remaining claims because all were barred by the statute of limitations. The trial court summarily dismissed all of Cantrell's claims. Cantrell appeals.

## UIM COVERAGE

Cantrell argues that the trial court improperly dismissed his breach of contract claim because there was a genuine issue of material fact as to whether he was hit by a motor vehicle and entitled to UIM coverage. We agree.

We review summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and he fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows there is no genuine issue of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions. Elcon Const., Inc., 174 Wn.2d at 169. "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

UIM coverage is a creature both of statute and of contract. That is, "the source of the obligation to offer UIM coverage is statutory," while the contractual relationship between the insured and the insurer governs the scope of coverage, subject to the minimum coverage requirements set forth in the UIM statute.

Fisher v. Allstate Ins. Co., 136 Wn.2d 240, 245, 961 P.2d 350 (1998); Britton v. Safeco Ins. Co. of Am., 104 Wn.2d 518, 531, 707 P.2d 125 (1985).

Here, Cantrell's UIM policy provides coverage for accidents caused by underinsured motor vehicles, including hit-and-run motor vehicles. Specifically, the policy states that it covers injuries from an "[u]nderinsured motor vehicle . . . [w]hich is a hit-and-run motor vehicle." A hit-and-run motor vehicle is defined as "a vehicle whose operator or owner cannot be identified, and which causes an accident involving: . . . [y]ou or any family member." Cantrell's UIM policy also contains the following provision, which addresses the burden of proof applicable where there is no physical contact with an underinsured vehicle that causes an accident:

> If there is no physical contact with the vehicle causing the accident the facts of the accident must be proved by competent evidence other than the testimony of a covered person or any person having a UIM claim resulting from the accident.

This burden of proof provision is consistent with RCW 48.22.030(8), which provides:

> (8) For the purposes of this chapter, a "phantom vehicle" shall mean a motor vehicle which causes bodily injury, death, or property damage to an insured and has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident if:
> (a) The facts of the accident can be corroborated by competent evidence *other than the testimony of the insured or any person having an underinsured motorist claim resulting from the accident*; and
> (b) The accident has been reported to the appropriate law enforcement agency within seventy-two hours of the accident.

(Emphasis added.)

4

Cantrell argues that he is entitled to UIM coverage because he was physically hit by a vehicle in a hit-and-run accident and was not involved in a "phantom vehicle" accident. Taking the evidence in the light most favorable to Cantrell, we agree that evidence in the record raises a genuine issue of material fact as to whether he was physically hit by a vehicle.

First, there is evidence that Cantrell heard a horn honk just before the accident. In a medical report by Dr. Thomas Hecht dated May 11, 2007, Dr. Hecht notes that Cantrell had "limited memory of the event, but [he] had heard a honk, and then essentially woke up in a ditch with people trying to help him." Cantrell also reported hearing a honk during a recorded statement to USAA on October 9, 2007:

> Well, . . . I've got one one thing . . . I think I remember. I had had, I don't know if it's just my mind making it up or not, but about the only thing that . . . I t- truly remember about the accident or think I that [sic] remember about the accident is hearing the sound of a horn. Whether I did or that's just something that y- y- you know, I was unconscious and and everything, so, you know, I don't know what it, it's kind of . . . .

Even though the medical report and Cantrell's statement are not unequivocal proof that Cantrell heard a honk, we must draw all reasonable inferences in favor of Cantrell. Herskovits v. Grp. Health Coop. of Puget Sound, 99 Wn.2d 609, 613, 664 P.2d 474 (1983) ("All reasonable inferences from the evidence must be resolved against the moving party, and in favor of the nonmoving party."). A reasonable jury could infer from these statements that Cantrell heard a honk before his accident and that the honk came from the vehicle that hit him.

Second, Cantrell submitted a photograph of bruising on his left triceps, shoulder and upper back. Based on that photograph, a reasonable jury could find that Cantrell was hit by a vehicle on the back left side of his body, which is consistent with his theory that a vehicle hit him from behind while he was riding on the right side of the road. Therefore, summary judgment was not proper.

USAA does not directly address this evidence. Rather, it argues that Cantrell did not provide sufficient evidence because he has no memory of the accident, there were no eyewitnesses, and his belief that he was hit by a vehicle is based on speculation by his medical providers. USAA implies that Cantrell must provide eye witness testimony to survive summary judgment. But USAA cites no legal authority for this proposition. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). For this reason, USAA's argument fails.

USAA also contends that Cantrell was required to provide corroborating evidence other than his own testimony to support his version of the events. It argues that the higher burden of proof necessary for a "phantom vehicle" accident, as required by both the UIM policy and RCW 48.22.030(8), is also applicable to a hit-and-run claim. This argument is not persuasive. First, RCW 48.22.030(8) applies only to phantom vehicles that do not physically contact a person or property. Because Cantrell provided evidence raising an issue of fact as to whether he was hit by a vehicle, he need not meet the

standard of proof articulated in that statute. And, contrary to USAA's assertion, Dixie Ins. Co. v. Mello, 75 Wn. App. 328, 877 P.2d 740 (1994), does not hold that the burden of proof for a hit-and-run and phantom vehicle are one and the same. Mello merely states that the policy language at issue in that case met the UIM statute's requirements for coverage because the policy language covered accidents with a phantom vehicle, even though the term "'phantom' vehicle" was not used in the policy. Mello, 75 Wn. App. at 333-34. Furthermore, even if RCW 48.22.030(8) did apply here, the photograph of Cantrell's bruising sufficiently corroborates his version of the events to preclude summary judgment because the photograph is not based on Cantrell's testimony alone.

Because Cantrell presented evidence that raises a genuine issue of material fact as to whether he was hit by a vehicle, summary judgment on his breach of contract claim was improper.

## STATUTE OF LIMITATIONS

Cantrell argues that the trial court erred in dismissing his IFCA, negligence, and CPA claims as time barred. We disagree.

The statute of limitation does not begin to run until a cause of action accrues. RCW 4.16.005; Gazija v. Nicholas Jerns Co., 86 Wn.2d 215, 219, 543 P.2d 338 (1975). "In most circumstances, a cause of action accrues when its holder has the right to apply to a court for relief." Gazija, 86 Wn.2d at 219. Tort claims, including negligence claims and insurance bad faith,[1] are subject to a

---

[1] The parties do not dispute that Cantrell's IFCA claim is an insurance bad faith claim.

7

three-year statute of limitations. RCW 4.16.080(2); Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash., 162 Wn. App. 495, 502, 254 P.3d 939 (2011). CPA claims are subject to a four-year statute of limitations. RCW 19.86.120. If a member of the armed forces is under a call to active service, the statute of limitations is tolled during the period of that active service. RCW 38.42.010(6)(a), .090(1). Whether a statute of limitations bars a claim is a legal question an appellate court reviews de novo. Bennett v. Comput. Task Grp., Inc., 112 Wn. App. 102, 106, 47 P.3d 594 (2002).

Here, USAA sent Cantrell a letter denying coverage on November 30, 2007. On December 5, 2007, USAA performed some additional investigation on Cantrell's claim, which closed on November 27, 2009. Cantrell was on active duty from the time his claim was denied until fall 2011, and the statute of limitations was tolled during that period. From fall 2011 until spring 2012, Cantrell was on reserve duty, and the statute of limitations was not tolled for approximately 6 months. Cantrell then returned to active duty from spring 2012 through June 2013, and the statute of limitations was again tolled. Cantrell returned to reserve duty in July 2013 and retired from the military on December 31, 2014. During that 18-month period, the statute of limitations was not tolled. Therefore, by January 1, 2015, approximately 2 years of the limitations period had passed, meaning that 1 year remained on Cantrell's IFCA and negligence claims and 2 years remained on his CPA claim.

On March 30, 2015, before the statute of limitations expired for any of Cantrell's claims, an attorney on behalf of Cantrell contacted USAA to make a

claim for the May 5, 2007, injury. As a result, USAA reopened Cantrell's claim. On July 8, 2015, USAA requested that Cantrell's attorney submit an interim medical report, bills, lost wages documentation, and photographs of his damaged bicycle and helmet. On December 15, 2015, two weeks before the expiration of the statute of limitations for the IFCA and negligence claims, USAA again requested Cantrell to submit "all medical records, bills, and other documentation" so that it could "evaluate for a potential UM claim." Cantrell's attorney responded to this request in a letter dated December 17, 2015. In early January 2016, the statute of limitations expired on Cantrell's IFCA and negligence claims.

On January 14, 2016, USAA sent Cantrell's attorney a letter describing the documentation it had received and informing him that the claim would be transferred to a new adjuster. On January 20, 2016, the new adjuster sent Cantrell's attorney a letter denying coverage because it was "unable to develop proof of physical contact between a motor vehicle and [Cantrell]'s bicycle or his person." By letters dated March 2 and 3, 2016, USAA informed Cantrell that it believed the 6-year statute of limitations had expired. On April 27, 2016, Cantrell's attorney responded to USAA's letters and stated that the statute of limitations was tolled until August 30, 2013, due to Cantrell's military service and, therefore, the 6-year statute of limitations had not yet expired. Cantrell filed suit against USAA 10 months later on March 3, 2017, approximately 1 year and 2 months after the expiration of Cantrell's IFCA and negligence claims and 2 months after the expiration for his CPA claim.

Cantrell argues that summary judgment was improper because there is a genuine issue of material fact whether his claims accrued on January 20, 2016, when he received the second denial letter, rather than in 2007 when the claim was originally denied. He suggests that USAA's decision to reopen the claim in 2015 is proof that the claim was not actually denied in 2007 and that the determination of when his claim accrued is an issue of fact for the jury. This argument is not persuasive. Not only does the record show that his claim was denied in 2007, his claim accrued at that time because he suffered appreciable harm from that denial and could have pursued bad faith claims against USAA upon receipt of the original denial letter. Haslund v. City of Seattle, 86 Wn.2d 607, 620, 547 P.2d 1221 (1976) ("'infliction of actual and appreciable damage will trigger the running of the statute of limitations'") (quoting Gazija, 86 Wn.2d at 219). USAA's decision to reopen the claim upon Cantrell's request years after it was denied does not restart the clock on the statute of limitations. Cantrell has not raised a genuine issue of material fact that his claims accrued in January 2016, rather than November 2007.

Cantrell also argues that there is a genuine issue of material fact as to whether USAA is equitably estopped from raising the statute of limitations as an affirmative defense. "Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." Robinson v. City of Seattle, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). The elements to be proved are (1) "an admission, statement, or act inconsistent with a claim afterward asserted"; (2) "action by another in reasonable reliance on

that act, statement, or admission"; and (3) "injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." Robinson, 119 Wn.2d at 82. "Estoppel is appropriate to prohibit a defendant from raising a statute of limitations defense when a defendant has 'fraudulently or inequitably invited a plaintiff to delay commencing suit until the applicable statute of limitation has expired.'" Robinson, 119 Wn.2d at 82 (emphasis omitted) (quoting Del Guzzi Constr. Co. v. Global Nw. Ltd., 105 Wn.2d 878, 885, 719 P.2d 120 (1986)).

Under the facts of this case, there is a genuine issue of material fact whether USAA made an inconsistent statement. As of December 15, 2015, USAA was still evaluating Cantrell's reopened claim. USAA's January 14, 2016, letter that the claim was being transferred to a new adjuster for further review is inconsistent with its subsequent claim that the statute of limitations expired on the IFCA and negligence claims on January 4, 2016. There is also a genuine issue of material fact whether Cantrell is injured by allowing USAA to assert the statute of limitations defense because he will lose the right to pursue those claims if the statute of limitations defense is upheld.

But Cantrell fails to present evidence that raises a genuine issue of material fact that he relied on USAA's statements to pursue a resolution of the claim with USAA directly, rather than pursuing a lawsuit. The only evidence Cantrell cites supporting his reasonable reliance are the letters from his attorney to USAA on December 15 and 17, 2015, which respond to USAA's request for more information. Although the attorney asks USAA to let him know how it

11

"would like to proceed," there is no indication that Cantrell decided to delay pursuing a lawsuit based on USAA's statements. In fact, a letter from Cantrell's attorney dated April 27, 2016, states that he did not believe that the statute of limitations commenced until August 30, 2013, and Cantrell was still within the statute of limitations by early 2016. Given this record, Cantrell has not presented evidence raising a genuine issue of material fact that USAA is equitably estopped from raising the statute of limitations.

Alternatively, Cantrell argues that the discovery rule prohibits USAA from asserting the statute of limitations as an affirmative defense. The discovery rule tolls the date of accrual of an action "until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 449, 6 P.3d 104 (2000). Here, Cantrell knew that USAA denied his claim on November 30, 2007. At that point, he had all of the facts necessary to establish a legal claim against USAA. Cantrell states that if USAA had told him his claim was denied when he requested that it be reopened in 2015, "he would have known his claim was not open and his statute of limitations was running." But because he does not directly assert that he was unaware the claim was denied in 2007, this argument is not persuasive. Cantrell does not present evidence raising a genuine issue of material fact that the discovery rule applies.

Finally, Cantrell argues that he was entitled to an additional six months of tolling under RCW 38.42.020(1) and, as a result, his CPA claim was asserted within the statute of limitations. We disagree. The meaning of a statute is a

12

question of law that this court reviews de novo. Durant v. State Farm Mut. Auto. Ins. Co., 191 Wn.2d 1, 8, 419 P.3d 400 (2018). Our "fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent." Durant, 191 Wn.2d at 8. "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended." Durant, 191 Wn.2d at 8. To discern a statute's plain meaning, we consider the text of the provision in question and the context of the statutory scheme as a whole. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002).

RCW 38.42.020(1) explains the applicability of the Washington Service Members' Civil Relief Act (SMCRA) and states:

> Any service member who is ordered to report for military service and his or her dependents are entitled to the rights and protections of this chapter during the period beginning on the date on which the service member receives the order and *ending one hundred eighty days after termination of or release from military service.*

(Emphasis added.) Tolling of the statute of limitations is just one of several "rights and protections" afforded to service members under the SMCRA. Under the statutory scheme, other rights and protections include protection against default judgments, stays of proceedings, and tolling of fines and penalties. RCW 38.42.050, .060, .070. Calculation of the statute of limitations as applied to service members is specifically addressed in RCW 38.42.090(1), which states:

> The period of a service member's military service may not be included in computing any period limited by law, rule, or order, for the bringing of any action or proceeding in a court, or in any board bureau, commission, department, or other agency of a state, or political subdivision of a state, or the United States by or against

13

the service member or the service member's dependents, heirs, executors, administrators, or assigns.

Nothing in the plain language of these statutes provides an additional 180 days of tolling after active duty ends. Although a service member may be entitled to the benefits of the SMCRA 180 days after release from military service, the plain language of the statute does not indicate an additional 180 days of tolling is appropriate. Therefore, Cantrell is not entitled to an additional 180 days of tolling on his bad faith claims.

For these reasons, we affirm the dismissal of Cantrell's negligence, IFCA, and CPA claims. But we reverse the dismissal of Cantrell's breach of contract claim and remand for further proceedings.

WE CONCUR: