# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KATHLEEN E. JOHNSON and STEVEN W. GENTRY,

　　　　　　　　Appellants,

　　　　v.

SHARON GREICHEN O'GRADY, PETER WEINER, JEREMIAH KERK, and CASSANDRA KERK,

　　　　　　　　Respondents.

DIVISION ONE

No. 82468-6-I

UNPUBLISHED OPINION

DWYER, J. — Kathleen Johnson and Steven Gentry appeal from the trial court's summary judgment order dismissing their claims. Johnson and Gentry assert that the trial court erred by ruling that the statutory limitation periods had expired with regard to several of the claims that were dismissed. Because the trial court properly ruled that the statutory limitation periods had expired for each of these claims, we affirm.

I

On June 12, 2017, Kathleen Johnson entered into a lease agreement with Sharon O'Grady. The property that Johnson leased from O'Grady was located in the city of Kirkland. Cassandra Kerk was O'Grady's leasing agent with regard to this property. Jeremiah Kerk, Cassandra's assistant, marketed the rental property for O'Grady.

After Johnson moved into the rental house, both she and her boyfriend, Steven Gentry, were ultimately exposed to a rodent infestation, chemicals that were used to address the rodent infestation, and mold. These exposures and the symptoms that followed were detailed in a letter, dated January 24, 2018, that was authored by Johnson and addressed to the "UW/Harborview Environmental Occupations Clinic."

This letter explained that, sometime in June 2017, after Johnson moved into the rental house, she noticed a "rodent hole" located in the garage of the house. In August 2017, Johnson "began complaining of itching and irritated eyes, followed soon after by a rash and itching that could not be explained." Then, in either late August or early September, Johnson heard "scurrying under the vents" located inside the house. Johnson alerted O'Grady of these noises, but O'Grady "denied a problem."

In September 2017, Johnson continued to experience a rash and itchiness. Her symptoms alleviated when she traveled to Hawaii for a week. However, upon her return from Hawaii, Johnson's symptoms became more severe. In late September, Johnson "turned on the heat and had an asthmatic attack like [she]'d never experienced before." Thereafter, O'Grady had the vents inside the house cleaned and Johnson placed "little filters in each vent."

In October 2017, an inspection of the house revealed that "small black hair and debris was caught on the filters even after cleaning." That month, Johnson's medical provider informed her "to remove [her]self from the house if it could be making [her] sick." Johnson acquired a second inspection of the house because

2

O'Grady "was being slow to respond with a solution." While the inspection was being performed, Johnson stayed in a hotel. Johnson was experiencing "symptoms of itching, chest pain, difficulty breathing, and rash." Because O'Grady "did not agree to" "fix the issues in the home with a company that agreed to be available," Johnson continued to stay in the hotel.

Also in October 2017, Johnson had a third inspection of the house performed. This inspection revealed that "rodents had eaten through the dryer vent, collected dog food and nested" and that "every time the dryer ran it sprayed dust, dander, and fecal material throughout the home." According to Johnson's letter, "[t]he pest inspectors all agreed there was a rodent problem."

Notably, Johnson's letter provided detail regarding the exposure of Johnson and Gentry to both mold and chemicals used to treat the rodent infestation in November 2017:

> November 2017
> November 11 the Landlady scheduled her handiman[1] [sic] to do work with her in the crawlspace. . . . She chose to stuff the dryer vents with steel wool and let [the rodents] be trapped (and die?) in the walls. From the time she began messing with the house November 11 to the time we moved my things to another home [on] 11/25[,] [Gentry] took photos of what he saw daily, I could not breathe in the house without coughing before the landlady's treatments, and do not remember going to the house after she started. *We saw a bucket of unknown agents, deodorizers*, and heat dishes pointed on my furniture, with the house closed up. . . .
>
> I was told by the landlady's real estate representative I could not stop her from taking care of the rodent issue her own way, *but she used deodorizers, chemicals we do not know of*, and applied heat dishes directly onto my furniture, while leaving the house completely closed up. We do not know what combination or types of vapors were created. We do not know if previous chemicals or treatments have been used in the home as well.

---

[1] In the complaint, Johnson and Gentry asserted that this handyman was Peter Weiner.

*When moving, in late November, our friend Keith helped [Gentry] with furniture and he said it smelled vile throughout the house, with maybe decomposing rodents in the walls and some mold in the air (he owns Bellevue Roofing and is experienced with these smells. He told me to tell [O'Grady] in summer that her roof was soft when I asked him to retrieve a toy off the roof…she was not concerned when I told her this information.*) He reported that he felt like he had "the flu" the day after helping [Gentry] move furniture from the old rental to the new rental. He also felt similar flu like symptoms after helping [Gentry] move furniture in the new house and accompanying me to see if the treatment done on the furniture worked to eliminate the ["]allergen" or whatever was making me react to it in early January. (It did not work).

*[Gentry] took pictures, documenting that the landlady was using various agents to try to treat the rodent issue and clean up her washer/dryer.*

When we moved Thanksgiving weekend we assumed that the furniture would need cleaning…*[Gentry] spent time in the house for several days and was exposed to the post-treatment vapors the most.* We washed things in bleach/soap on the porch before entering [the] house that had been in [the] kitchen or near the family/laundry room. We wiped down all furniture multiple times before entering [the] home, storing soft antique couches and chairs in the garage. The soft furniture was moved to a storage unit on December 1 because it was infusing the garage with odor and itchy dust.

*When we put my clean hanging clothing (from closets) in the clean Volvo it was thought to be safe…after transporting that and a cedar chest in three trips I was a swollen, itching mess and realized the Volvo was contaminated with something. We soon after removed clothing and sent [it] to a natural C02 cleaners, with me trying to wash what I could. The clothes that returned after cleaning caused me to have a rash and painful itching wherever they touched my body. Even in the dry cleaning bags, after a few days of sitting in the new house closets[,] made me break out in a hot, iitchy [sic] rash being in the same room, but [I] felt the symptoms were more systemic than topical. . . .*

*Washing clothing/blankets from the house caused the air in the new home to be itchy and difficult for me to breathe, with rashes and welts on my exposed skin. I got a contact dermatitis from washing*

4

*a blanket and not using gloves to transfer after washing it to the dryer.*

(Emphasis added.)

In December 2017, Gentry experienced chest pain, difficulty breathing, and "numbness in his arm and hand." After going to the emergency room, Gentry's "eyes were red and watery, his skin pale, and he had slightly elevated bilirubin and was borderline anemic." Johnson and Gentry also "discovered that the cabinet from the room where chemicals were used was particularly vile and when [Johnson] leaned over to get something [she] accidentally got a whiff of it." The scent of the cabinet "caused an instant reaction in [Johnson], with redness/swelling in [her] face" and "a cramping tight feeling in [her] neck/tongue."

Also in December 2017, Johnson and Gentry hired "a company that specialize[d] with allergen and mold/mildew cleaning to clean the carpets of [the] new home." Nevertheless, Johnson continued to experience reactions "to the furniture in the house and maybe the allergens that attached to the carpet while moving things around."

On March 9, 2018, Johnson and Gentry received test results that analyzed their blood and urine. These test results revealed that Johnson and Gentry were exposed to mold and toxic chemicals. That month, according to the complaint that was filed by Johnson and Gentry, Johnson was diagnosed by a medical doctor with "Mold Toxicity and Mycoses and Toxic Effects of Fumes, Vapors, or Gas." Additionally, in April 2018, Gentry was diagnosed by the same medical doctor with "Mold Toxicity and Mycoses." Then, on August 22, 2018, Johnson

received test results of her furniture which revealed that toxic chemicals were also located on the furniture.

On June 23, 2020, Johnson and Gentry filed a complaint in King County Superior Court against O'Grady, Weiner, Cassandra Kerk, and Jeremiah Kerk. This complaint alleged various causes of action against these defendants. In particular, the complaint alleged that (1) O'Grady engaged in breach of contract, (2) O'Grady violated the Residential Landlord-Tenant Act of 1973[2] (the RLTA), (3) O'Grady, Weiner, Cassandra, and Jeremiah engaged in negligence, and (4) O'Grady and Jeremiah engaged in fraud.

On January 8, 2021, Cassandra and Jeremiah filed a motion for summary judgment in which they asserted that the statutory limitation periods had expired with regard to each of the claims advanced against them by Johnson and Gentry. In this motion, Cassandra and Jeremiah also averred that "no Defendant has been served as of the date of filing this Motion." On January 11, O'Grady and Weiner filed a motion wherein they joined in the motion for summary judgment. Therein, O'Grady asserted that the statutory limitation period on the breach of contract claim had also expired.[3]

---

[2] Ch. 59.18 RCW.

[3] In their motion, O'Grady and Weiner asserted that a three-year statutory limitation period applied to the breach of contract claim:

> Plaintiff's may claim that a 6-year statute of limitations applies to a Breach of Contract claim; however, such a claim in this instance is based on the same facts/allegations and is duplicative of other claims e.g., RLTA and negligence, and instead sounds in tort. As such a three-year statute of limitations should apply. *See e.g.*, *Hudson v. Condon*, 101 Wn. App. 866, 6 P.3d 615 [(2000)], review denied 143 Wn.2d 1006, 21 P.3d 290 [(2001)].

Because Johnson and Gentry do not challenge the trial court's dismissal of their breach of contract claim, we do not express an opinion as to whether a three year or six year statutory limitation period applied to that claim.

On January 16, 2021—after the defendants moved for summary judgment—Johnson and Gentry served summons on each of the defendants. This was approximately seven months after the June 23, 2020 filing of the complaint.

On February 5, 2021, the trial court heard the defendants' motion for summary judgment. On February 8, the trial court entered an order granting the motion and dismissing with prejudice all of the claims advanced by Johnson and Gentry. On February 18, Johnson and Gentry filed a motion for reconsideration. On March 4, the trial court denied this motion.

Johnson and Gentry appeal.

II

On appeal, Johnson and Gentry contest only the trial court's grant of the defendants' motion for summary judgment with regard to their negligence, fraud, and RLTA claims.[4] The court erred, according to Johnson and Gentry, because they did not discover that mold and toxic chemicals were the causes of their injuries until test results of their blood and urine were produced on March 9, 2018.[5] Therefore, they contend, the three-year statutory limitation periods for

---

[4] As noted above, Johnson and Gentry do not challenge the trial court's dismissal of their breach of contract claim. Hence, in the argument section of their opening brief, Johnson and Gentry provide the relevant statutory limitation periods with regard to only their negligence, fraud, and RLTA claims:

> It is undisputed that there is a three-year statute of limitations on Appellants' claims for negligence, fraud and violation of the Landlord Tenant Act, RCW 59.18.280 ("LTA"). . . . RCW 4.16.080(2) provides a three-year statute of limitations for negligence and fraud claims. The same statute of limitations applies to a claim under the LTA.

Br. of Appellants at 15.

[5] In their opening brief, Johnson and Gentry state that they "are not challenging the statute of limitations dismissal of their claims arising from the rat infestations; they knew the elements of their damages claim from the rat infestations by the fall of 2017, and service was not complete until January, 2021." Br. of Appellants at 1.

each of the claims disputed on appeal had not expired when the defendants were served summons in January 2021. Because the causes of the injuries sustained by Johnson and Gentry were susceptible of proof in November 2017, we disagree.

A

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson Nw., Inc., 197 Wn. App. 491, 498, 389 P.3d 617 (2016). In so doing, we draw "all inferences in favor of the nonmoving party." U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc., 104 Wn. App. 823, 830, 16 P.3d 1278 (2001). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

B

A three-year limitation period applies to any "action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated." RCW 4.16.080(2).[6] The same limitation period applies to "[a]n action for relief upon the ground of fraud, the cause of action in such case not to

---

[6] The RLTA does not include a statutory limitation period. However, when a cause of action under the RLTA seeks recovery for either personal injury or damage to personal property, the three-year limitation period provided by RCW 4.16.080(2) applies to that action. See Silver v. Rudeen Mgmt. Co., 197 Wn.2d 535, 541-42, 484 P.3d 1251 (2021).

be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  RCW 4.16.080(4).

Our Supreme Court has explained when a cause of action accrues:

> Statutes of limitations do not begin to run until a cause of action accrues.  RCW 4.16.005.  Usually, a cause of action accrues when the party has the right to apply to a court for relief.  Gazija v. Nicholas Jerns Co., 86 Wn.2d 215, 219, 543 P.2d 338 (1975); Lybecker v. United Pac. Ins. Co., 67 Wn.2d 11, 15, 406 P.2d 945 (1965).  In many instances an action accrues immediately when the wrongful act occurs, but in some circumstances where the plaintiff is unaware of harm sustained, a "literal application of the statute of limitations" could "result in grave injustice."  Gazija, 86 Wn.2d at 220.  To avoid this injustice, courts have applied a discovery rule of accrual, under which the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action.  Green v. A.P.C., 136 Wn.2d 87, 95, 960 P.2d 912 (1998).  This does not mean that the action accrues when the plaintiff learns that he or she has a legal cause of action; rather, the action accrues when the plaintiff discovers the salient facts underlying the elements of the cause of action.  Id.

1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 575-76, 146 P.3d 423 (2006).

Thus, as a general rule, "a cause of action accrues when a party has the right to apply to a court for relief."  1000 Virginia Ltd. P'ship, 158 Wn.2d at 575. "In general terms, the right to apply to a court for relief requires each element of the action be *susceptible* of proof."  Haslund v. City of Seattle, 86 Wn.2d 607, 619, 547 P.2d 1221 (1976) (emphasis added).

C

In its order granting the defendants' motion for summary judgment, the trial court concluded "that the statute of limitations ha[d] run on all of Plaintiffs' claims and that they are now time-barred."  Johnson and Gentry assert that the

trial court erred by dismissing three categories of claims with regard to injuries that arose from exposure to both mold and toxic chemicals.

First, Johnson and Gentry contend that the trial court erred by dismissing their negligence claim against O'Grady, Weiner, Cassandra, and Jeremiah. This claim alleged that each of the defendants negligently exposed Johnson and Gentry to both mold and toxic chemicals.

Second, Johnson and Gentry assert that the trial court erred by dismissing their claim of fraud against O'Grady and Jeremiah. This claim alleged, in pertinent part, that O'Grady and Jeremiah engaged in fraud by failing to reveal to Johnson that the rental house was infested with mold.

Finally, Johnson and Gentry contend that the trial court erred by dismissing their claim arising under the RLTA. This claim alleged that O'Grady violated the RLTA by "failing to keep her home in a safe, healthy, and habitable condition, and by retaliating against Plaintiff by refusing to remedy the defective conditions in her home until [Johnson] was forced from the home."

The trial court did not err by dismissing any of these claims. The letter that was authored by Johnson and addressed to the Harborview Environmental Occupations Clinic demonstrates that the disputed causes of action accrued in November 2017. Indeed, this letter detailed the exposure to both mold and the chemicals used to treat the rodent infestation that Johnson and Gentry experienced in November 2017. Regarding toxic chemicals, this letter stated that, in November 2017, Johnson and Gentry "saw a bucket of unknown agents, deodorizers" in the house and that Gentry "took pictures, documenting that the

10

landlady was using various agents to try to treat the rodent issue and clean up her washer/dryer."

Concerning mold, this letter provided:

When moving, in late November, our friend Keith helped [Gentry] with furniture and he said it smelled vile throughout the house, with maybe decomposing rodents in the walls and some mold in the air (he owns Bellevue Roofing and is experienced with these smells. He told me to tell [O'Grady] in summer that her roof was soft when I asked him to retrieve a toy off the roof…she was not concerned when I told her this information.) He reported that he felt like he had "the flu" the day after helping [Gentry] move furniture from the old rental to the new rental.

Likewise, in an e-mail message authored by Johnson on December 5, 2017, Johnson stated:

11/24 Continued moving, Kieth [sic] Arvon, owner of Bellevue Roofing came to help [Gentry] with heaviest items and noted the stench throughout the home. He commented that he may smell mold as well. He had alerted me that the roof was "soft" this summer when retrieving a toy…[O'Grady] was not concerned when I offered his information to her.

Thus, in November 2017, Johnson and Gentry were aware that mold was a potential cause of their injuries. Notably, Johnson and Gentry did not have a mere suspicion that mold was located in the house. Rather, an individual who had personal experience in an industry that encounters mold informed Johnson and Gentry that he perceived what he believed to be mold in the house. Moreover, this individual had, in the summer of 2017, advised Johnson that the "roof was soft" and that Johnson should notify O'Grady of this hazard. On this record, the causes of the injuries that were sustained by Johnson and Gentry were "susceptible of proof" in November 2017. Haslund, 86 Wn.2d at 619. Accordingly, the disputed causes of action accrued at that time.

11

Johnson and Gentry contend that the discovery rule applies and, in turn, their claims accrued on March 9, 2018.  This is so, according to Johnson and Gentry, because the test results that were produced on that date revealed "the identity of the chemical toxins which were causing their physical problems."[7]

However, the discovery rule does not apply in this way.  As already explained, the discovery rule applies "where the plaintiff is unaware of harm sustained" and "a 'literal application of the statute of limitations' could 'result in grave injustice.'"  1000 Virginia Ltd. P'ship, 158 Wn.2d at 575 (quoting Gazija, 86 Wn.2d at 220).  Put differently, "[i]n certain torts, . . . injured parties do not, or cannot, know they have been injured; in these cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action."  White v. Johns-Manville Corp., 103 Wn.2d 344, 348, 693 P.2d 687 (1985).

Johnson's letter to the Harborview Environmental Occupations Clinic makes clear that both Johnson and Gentry were aware, in November 2017, that they had sustained injuries following their exposure to both mold and the chemicals used to treat the rodent infestation.  In particular, this letter provided that, sometime in November 2017 and after Johnson's furniture was moved from O'Grady's house to a new house, the furniture "infus[ed]" the garage of the new house with "itchy dust."

---

[7] Br. of Appellants at 12.

Additionally, the letter provided extensive detail regarding the symptoms that Johnson experienced in November 2017 after she retrieved her clothing from O'Grady's house:

> When we put my clean hanging clothing (from closets) in the clean Volvo it was thought to be safe…after transporting that and a cedar chest in three trips I was a swollen, itching mess and realized the Volvo was contaminated with something.  We soon after removed clothing and sent [it] to a natural C02 cleaners, with me trying to wash what I could.  The clothes that returned after cleaning caused me to have a rash and painful itching wherever they touched my body.  Even in the dry cleaning bags, after a few days of sitting in the new house closets[,] made me break out in a hot, iitchy [sic] rash being in the same room, but [I] felt the symptoms were more systemic than topical. . . .
>
> Washing clothing/blankets from the house caused the air in the new home to be itchy and difficult for me to breathe, with rashes and welts on my exposed skin.  I got a contact dermatitis from washing a blanket and not using gloves to transfer after washing it to the dryer.

Finally, with regard to Gentry, the complaint stated that, "[a]fter moving [Johnson's] furniture and cleaning the home Thanksgiving weekend and the following weeks, [Gentry's] symptoms worsened, with skin changes, bruising, increased pain, and shortness of breath."

In light of the symptoms that both Johnson and Gentry experienced in November 2017, they were aware that they had been injured at that time.  The test results that were produced on March 9, 2018, merely provided better evidence that mold and the chemicals used to treat the rodent infestation caused

their injuries. But their knowledge of their injuries—and the connection of the injuries to exposure to mold and chemicals—was known to them in November.[8]

Moreover, because the disputed causes of action accrued in November 2017, the statutory limitation periods with regard to these causes of action expired before the lawsuit commenced. Indeed, RCW 4.16.170 clarifies when an action is deemed to have commenced:

> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

RCW 4.16.170.

Our Supreme Court has clarified the meaning of this statute:

> The plain language of the statue clearly states that for the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served. Therefore, service of a summons alone is adequate to toll the statute of limitations conditioned upon the plaintiff filing the

---

[8] Johnson and Gentry cite to In re the Estates of Hibbard, 118 Wn.2d 737, 826 P.2d 690 (1992), in support of their argument that the discovery rule delays the accrual of their causes of action until March. In that case, our Supreme Court held:
> Application of the [discovery] rule is limited to claims in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational diseases, self-reporting or concealment of information by the defendant. Application of the rule is extended to claims in which plaintiffs could not immediately know of *the cause* of their injuries.
Hibbard, 118 Wn.2d at 749-50 (emphasis added).
However, as already explained, Johnson's letter to the Harborview Environmental Occupations Clinic demonstrates that, in November 2017, both Johnson and Gentry were capable of immediately knowing the causes of their injuries: namely, mold and the chemicals used to treat the rodent infestation. Accordingly, Hibbard is of no aid to Johnson and Gentry.

summons and complaint within 90 days of the service of the summons. If following service of the summons, the complaint and summons are not so filed, *or following filing of the complaint, service of the summons is not so made, then the action is not deemed commenced and the statute of limitations is not deemed to have been tolled.* In effect, the statute provides a 90 day "catch up" or grace period within which to comply with all its requirements.

<u>Nearing v. Golden State Foods Corp.</u>, 114 Wn.2d 817, 822, 792 P.2d 500 (1990) (emphasis added).

Johnson and Gentry filed their complaint on June 23, 2020. However, they did not serve summons on each of the defendants until January 16, 2021, which was approximately seven months after the complaint was filed. Because Johnson and Gentry did not serve summons within 90 days of the complaint being filed, the lawsuit commenced on January 16, 2021. <u>See</u> RCW 4.16.170. Furthermore, because more than three years had elapsed since the disputed causes of action accrued in November 2017, the statutory limitation periods for these causes of action had expired before the lawsuit was commenced.

Accordingly, the trial court did not err by granting the defendants' motion for summary judgment.

Affirmed.

WE CONCUR: